C. R. CLARK, appellee, v. P. B. SHERRIFF et al., defendants, and PIERSON HOLLOWELL COMPANY, INC., appellant.

No. 48877.

(Reported in 74 N.W.2d 569)

FEBRUARY 7, 1956.

Hall & Ewalt, of Indianola, for Pierson Hollowell Company, Inc., appellant.

Watson & Herrick, of Indianola, for C. R. Clark, appellee.

Cosson, Stevens, Hauge & Cosson, of Des Moines, for P. B. Sherriff, appellee.

Mason G. Ouderkirk, of Indianola, for James L. Van Hook and Robert D. Batey, appellees.

SMITH, J.—Iowa Code section 658.4, so far as pertinent here, provides: "For willfully injuring any timber, tree, or shrub on the land of another * * * the perpetrator shall pay treble damages at the suit of any person entitled to protect or enjoy the property."

Plaintiff, a resident of Fort Des Moines, Iowa, owns 44 acres of land in Warren County, Iowa, viz: a 20-acre piece (S½ SW¼ SW¼ of Section 1, 77 N., Range 24 W) ; and 24 acres in the southeast corner of Section 2, lying immediately west of the twenty. Defendant Sherriff owns the land east and north of plaintiff's twenty; and immediately north of plaintiff's 24 acres in Section 2 is the land known in the record as the Ledlie land.

The North River flows through the Ledlie land easterly onto the Sherriff land, loops south down onto plaintiff's twenty and back north to the Sherriff premises. Approximately three acres of plaintiff's twenty lie within this loop. When plaintiff bought the land in 1952 there were (he says) twenty large walnut trees on the twenty, ten of which were within the three-acre loop, "I purchased this * * * for the purpose of attaining the walnut logs." There was no fence between plaintiff's twenty and the Sherriff land to the north. No public road leads to the 44 acres.

Defendant Pierson Hollowell Company is an Indiana concern engaged in the manufacture of walnut logs into finished products. Defendants Van Hook and Batey are walnut log "producers." Van Hook testifies: "As a log producer I try to find the logs and try to buy them and put them on the track." He disclaims having any relationship with defendant Batey but says that in the present transaction he bought or was buying Ledlie and Sherriff logs from Batey. They were operating together in

that area, Batey cutting and Van Hook removing the logs, all under some sort of general direction of one Don Welch, a buyer for defendant Pierson Hollowell Company. Welch testifies: "I think we purchased logs from him (Van Hook) that are referred to as the Sherriff logs delivered in Indianola." Van Hook testifies he used Pierson Hollowell Chevrolet truck and power saw and was paid on a commission basis. Defendant Batey was not at the trial.

Defendant Sherriff testifies Batey came to his home in January 1954 or perhaps earlier. Sherriff told him, "You take what logs I have up there (on that north twenty) and pay me the same proportion that you pay Mr. Ledlie and I will be perfectly satisfied." He says he explained just how the land lay and drew a pencil sketch. He says he told Batey to drive in with his loads "and my tenant would count the logs."

On February 6, 1954, Batey brought him Van Hook's check for $308.50. "I knew at that time that he had cut somebody else's trees." Sherriff sent the check to Van Hook by letter dated February 20, 1954, saying, in part:

"Herein please find your check for $308.50 left me by your Mr. Robt. Batey for 47 walnut logs which I cannot accept for the following reasons: Most of the logs were taken off my neighbor's farm, Mr. C. R. Clark * * * only a few were taken off my farm.

"When your Mr. Batey called at my home enquiring about logs I gave him a pencil drawing of my land containing some logs and cautioned him to not get over on any of the adjoining property, to take all the walnut logs on my land and to pay me the same as he was paying Mr. T.A. Ledlie for similar logs * * *. This he did not do but took most of the logs off. of Mr. Clark's land, without authority, left several uncut trees, left some cut logs and some parts of cut trees that should have been cut into logs. Also did not estimate the value of our logs as agreed.

"Mr. Clark is very much upset about this matter and rightly so. * * *."

Sherriff testifies substantially to these same facts mentioned in the letter. Plaintiff learned in the last week of Janu-

ary 1954 that someone was cutting his walnut trees. He and defendant Sherriff investigated and found 25 large trees had been cut, of which 20 were off plaintiff's land. They had been hauled to Indianola and shipped from there to defendant Pierson Hollowell's factory.

This action was commenced and judgment for treble damages in the sum of $3000 in favor of plaintiff rendered against defendants Van Hook, Batey and Pierson Hollowell Company. All appealed but only the Company has filed brief and argument. The motion to dismiss the Van Hook and Batey appeals was submitted with the case and is now sustained. Defendant Batey was apparently represented at the trial by defendant Van Hook's attorney. Defendant Sherriff filed cross-petition against the other three defendants and was awarded damages against them in the sum of $200. This appeal is also from that judgment.

I. There is ample evidence to sustain a finding that plaintiff's trees were cut and hauled away by Batey and Van Hook collaborating. Defendant Pierson Hollowell Company on appeal questions the sufficiency of the evidence to sustain the judgments entered against it. It specifies six "errors relied on for reversal" and argues them in five divisions. But as between it and plaintiff there are involved only two questions: First, the sufficiency of the evidence to establish such relationship between defendant Company and defendants Van Hook and Batey as to make it liable for their trespass and conversion; and second, its sufficiency to justify treble damages under the terms of Code section 658.4, supra.

It must be remembered that although tried by the court without a jury the action is at law and the judgment must be affirmed unless it be found the record fails to show sufficient evidence to generate a jury question. No procedural errors are assigned.

II. The trial court found: "The evidence shows that just prior to the cutting of the plaintiff's walnut timber Van Hook and Batey were working for the defendant Pierson Hollowell Company, Inc., cutting walnut timber on the Ledlie land * * *. That this cutting was really under the supervision of the witness, Welch, who is the representative of the defendant Pierson

Hollowell Company. * * * that the defendants Van Hook and Batey went down to the Sherriff and Clark land and looked at the walnut timber. That it looked 'buyable.' * * * that the defendant Batey went over to the defendant Sherriff's home and discussed the buying of the Sherriff trees. * * * that Batey was told by Mr. Sherriff that he did not have many trees and Mr. Sherriff drew a plat of his land * * * and cautioned him not to cross his line. Batey said he knew where they were and that they would pay the same as they paid for the trees on the Ledlie property."

It is undenied in the record that Batey handled the transaction for the purchase of the Sherriff logs and told Sherriff "he was buying them for Mr. Van Hook." Sherriff says "I never saw Mr. Van Hook prior to the time of this hearing." Van Hook testifies he bought the logs from Batey but he also says he paid Batey cash for "the labor and everything. Somewhere around $400", and concedes he drew the check tendered to Sherriff. After the logs were taken Batey tendered Van Hook's check, payable to Sherriff, in payment for them. Though Van Hook says he was buying from Batey, the trial court was not bound by Van Hook's testimony. Nor are we.

The Van Hook testimony must be appraised in the light of the circumstances. It conflicts with the fair inferences possible to be drawn by the trier of the fact from other evidence, and we are bound by the determination so made.

III. The only appellant here is Pierson Hollowell Company, Inc. The plaintiff alleges that defendants Van Hook and Batey "were, at all times material to the cause of action herein, acting as agents and employees of said Pierson Hollowell Company, Inc., * * *"; also that as individuals and as such agents they "conspired together with the intent of committing waste and trespass" on plaintiff's premises and, in effect, that plaintiff's walnut trees in question were taken pursuant to said conspiracy.

It must be remembered that Pierson Hollowell, though an Indiana business concern, was actually present throughout the transaction in the person of Don Welch and through him took possession of plaintiff's walnut timber at some stage of the proceedings. Both Welch and Van Hook reside in Clinton, Iowa.

Welch was also originally a "producer." Batey comes from De-Witt, also in Clinton County, though Van Hook says he has only known him for "approximately two to two and a half years, three maybe."

Van Hook in testifying to his claimed purchase of the logs from Batey testifies the transaction was consummated "around the first part of February" on the Sherriff farm: "Those present were Robert Batey, Gordon Smith and Ernie Lobig, who is dead now, and myself." No reason or explanation is offered for the failure of the judgment defendants to produce Batey and Smith as witnesses. Van Hook says he told Sherriff over the phone that Batey was in Storm Lake: "He was up there, caretaker of the lake. *.* * My connection with Mr. Batey is nothing more than I bought logs from him. * * * My answer to the first interrogatory * * * implying that I made the purchase of walnut logs from P. B. Sherriff on or about February 1, 1954, is not correct. * * * Robert Batey actually made the purchase, while I was cutting logs on Ledlie. I was hauling, I wasn't cutting; * * *."

The record is too long for satisfactory condensation or analysis. We have studied it carefully and are persuaded there was sufficient circumstantial evidence to create a question of fact as to the real relationship between Batey and Van Hook on the one hand and defendant Pierson Hollowell Company on the other. Whether these individual defendants were employees of defendant Company, or whether there was such collaboration among them as to support a charge of conspiracy, need not be determined here. It may even be admitted different minds might disagree as to the ultimate fact.

The trial court found "Van Hook and Batey were working for the defendant Pierson Hollowell Company, Inc., cutting walnut timber on the Ledlie lands." We cannot say there was no evidence to support the finding.

Since we are not trying the case de novo we set out principally the facts favorable to the trial court's decision. There are other straws, insignificant standing alone but significant under all the circumstances, notwithstanding express denials of ultimate facts by interested parties.

At one stage of Welch's testimony he admits Van Hook had

been "producing" logs for defendant Company four or five years. He (Welch) was present at the Ledlie job. He admits making the figures of Exhibit D-1 which computed the amount ($308.50) for which Van Hook's check was tendered to Sherriff by Batey. He (Welch) practically admits he made Exhibit D-1 for Batey and that it is on "one of our tally sheets."

Van Hook testifies: "In this case I received a check from Pierson Hollowell for these particular logs * * *. Mr. Welch was at the Ledlie job, sure. I believe he was out there at the Sherriff job a time or two." Again he says: "I followed Mr. Welch's instructions there on this job when he was out there. That was what he was there for."

There was plenty of evidence Batey, Van Hook and Welch were working together in the area. They were not there by chance. It was for the trial court to determine the issue.

IV. Code section 658.4 (already quoted) bases the right to recover treble damages upon *"willfully* injuring any timber, tree, or shrub on the land of another" (emphasis supplied). We have next to consider whether there is evidence to sustain the trial court's imposition of *treble* damages against appellant Pierson Hollowell Company. It must be apparent we are dealing with a word of elastic use in ordinary conversation, and of legal meaning not always too well defined. These trees were cut and removed under conditions that may be said to indicate something more than mere carelessness or recklessness. Of course there was no personal malice against the owner. But there was a loose disregard for the rights of others. Batey understood there were not many walnut trees on the Sherriff land. Yet of the entire twenty-five he cut, twenty were plaintiff's. Certainly there was something more than mere inadvertence. The defendants were apparently bent on getting as much walnut as possible. We think it was a question of fact for the trial court to determine whether their action was "willful."

The word "willfully" is by legal lexicographers usually or most frequently defined as "intentionally"—"knowingly"—distinguished on the one hand from accidentally and on the other from maliciously. See Bouvier's Law Dictionary (Baldwin's Ed. 1934); Black's Law Dictionary, Third Ed. Not too long ago (1944) a Federal Circuit Court said: "It 'is a word of many

meanings' depending upon the context in which it is used." Zimberg v. United States, 1 Cir., Mass., 142 F.2d 132, 137, citing Spies v. United States, 317 U. S. 492, 497, 63 S. Ct. 364, 367, 87 L. Ed. 418.

Our own court once defined "willfullness", as used in a statute concerning injury of stock upon a private railway crossing, as meaning "something more than mere oversight, carelessness, neglect, or even shiftlessness. True, in the legal sense of the word, an intentional act is ordinarily willful * * *." Claus v. Chicago G. W. Ry. Co., 136 Iowa 7, 11, 111 N.W. 15, 16.

The word "willful" used in an earlier version (section 4571, McClain's Code) of the present statute (section 658.4) was considered in Werner v. Flies, 91 Iowa 146, 149, 59 N.W. 18, 19. In that case this court said: "It is a mistake to suppose that a willful act, which authorizes the recovery of treble damages, means simply 'willingly or purposely' * * *. It means an act done wantonly, and without any reasonable excuse." And in a later case that definition was reaffirmed. Koonz v. Hempy, 142 Iowa 337, 340, 120 N.W. 976. Unfortunately the word "wantonly" is as elastic as "willfully." There is no help to be had from decisions of other courts, but see annotation IIIc, 111 A. L. R. 79, 85.

Our conclusion here is that there is circumstantial evidence to support the conclusion that plaintiff's walnut timber was "willfully" taken within the meaning of the statute and that the relationship of appellant to the other judgment defendants was such as to sustain the judgment for treble damages. See Lawrenz v. Langford Electric Co., 1939, 206 Minn. 315, 324, 288 N.W. 727, 731, quoting Helppie v. Northwestern Drainage Co., 127 Minn. 360, 361, 149 N.W. 461, and other cases. We spend no time on the question of the amount of basic or actual damage. There is evidence to support the judgment of the trial court.

V.   Our conclusion as to the $200 judgment in favor of defendant Sherriff is of course also an affirmance. The circumstantial evidence connecting the defendants is the same. We do not believe the amount is questioned on appeal.

Both judgments are accordingly affirmed.—Affirmed.

All JUSTICES concur.