IN RE ESTATE OF JOHN BALLARD, deceased.

## No. 50180.

(Reported in 107 N.W.2d 436)

FEBRUARY 8, 1961.

Mitchell, Mitchell & Murray, of Fort Dodge, for appellant.

Pasley, Singer & Seiser, of Ames, for appellee.

OLIVER, J.—May 3, 1958, Carrie E. Christian filed claim in Story District Court against the administrator of the estate of John Ballard, deceased, in substance, as follows: To housekeeping services, January 12, 1955 to September 12, 1955, 240 days at $5 per day, $1200; September 12 to December 12, 1955, part-time services, three months at $50 per month, $150; December 12, 1955 to January 12, 1956, thirty days at $5 per day, $150; January 12 to March 12, 1956, two months part time at $50 per month, $100; March 12 to May 12, 1956, sixty days at $5 per day, $300. Total claim $1900. This claim was contested by the administrator. Trial to the court resulted in its disallowance, and this appeal by claimant.

Decedent, John Ballard, was divorced. He lived alone on a small farm near Ames, Iowa. Claimant testified as follows: She had formerly worked in Ames, and returned to that city January 12, 1955, having seen an ad in a Des Moines newspaper that John Ballard, whom she had never met, wanted a housekeeper. On that day she commenced living in and working at a house near Ames, later shown in the record to be the home of John Ballard. Until September 12 she spent each full day there, doing housework.

She testified also: On September 12 she started working as a cook, meal planner and buyer at a fraternity house in Ames at $180 the first month and $200 per month thereafter. She worked there from 6:30 in the morning until noon and for two hours after 4 p.m. On Saturdays and Sundays she worked half a day.

While working at the fraternity house she continued to live and do housework at John Ballard's house. She ate at the fraternity house and took two meals per day from there to the Ballard house. From December 1955 to January 12, 1956,

the fraternity house was closed and she spent each full day working at the Ballard house. From January 12 to March 12, 1956, she worked at the fraternity house and Ballard's, the same as during the previous fall. On March 12, 1956, she discontinued her work at the fraternity house but continued working at the Ballard house until May 12, 1956. During the entire period in 1955 and 1956 she had a few days off, from time to time.

A tavern keeper testified she saw claimant in the tavern in Ames with John Ballard a half-dozen times about 1955 and 1956 and Ballard introduced claimant to her as his new housekeeper, Carrie. Another witness testified she visited the Ballard home two or three times at the invitation of Ballard and claimant and saw claimant working at housekeeping tasks there, also that claimant and decedent visited her several times, and decedent said claimant was the best housekeeper he ever had. The witness testified the fair value of housekeeping services there was $5 per day.

In her cross-examination claimant was confronted with various cards and notes which she admitted having sent Ballard. The first in point of time was an envelope postmarked, "Reynolds, Ill., Dec. 23, 1954," and addressed to John Ballard. It contained a holiday card signed, "Carrie." Claimant testified she did not know Ballard at the time she sent this card to him and first met him January 12, 1955.

An envelope addressed to Ballard by claimant and postmarked Muscatine, Iowa, January 25, 1955, contained what claimant testified was a "hello card", upon which she had written, "Dear John. 3:06 P. M. Tuesday. Just stoped in Muscatine. * * * Want thank you for all kindness you gave me. Been wondering as I drove along what you spent the day at. I ate dinner in Oskaloosa, Iowa, only a lunch—Want get home so can get a good birthday supper. I'll look for a letter. With this I send good luck to next no up. You can be such a dear when you want. I had two wonderful days. Bet you will enjoy your own bed tonite. Come down whenever you like. You need no no down here. Love Carrie." On redirect examination claimant again testified that, on January 25, 1955, she was living at the John Ballard residence.

Claimant sent decedent a 1955 Valentine entitled: "For Someone I'm Longing to See", and signed, "Love Carrie", also a Father's Day card signed, "With love, Carrie, 1955." A birthday card mailed decedent from Chicago, December 16, 1955, contained a personal note starting, "Dear John" and ending, "Love Carrie." A letter to decedent from Chicago postmarked two days later, stated in part: "Take care of you for me", and ended, "My love, Carrie." The most recent mail placed in evidence was a "Holiday Greeting" card, restrained in tone and signed by claimant, "Carrie", "Chris" (her present husband) with the envelope postmarked "Ames, Dec. 19, 1957."

There was testimony that, at a party, when she was introduced as John Ballard's housekeeper, claimant said, "No, I am his lady friend." Claimant admitted this and explained she thought she should be introduced as his friend out in public.

The trial court denied the claim against decedent's estate. Claimant has appealed.

I. A claim in probate tried to the court without a jury is not triable de novo upon appeal. Upon questions of fact, findings of the trial court have the effect of a special verdict of a jury, and, if supported by substantial evidence, will not be disturbed by this court. R. C. P. 334; Roth v. Headlee, 238 Iowa 1340, 1342, 1343, 29 N.W.2d 923, 924, and citations.

In the case at bar the ultimate finding of the trial court was: "Taking all the circumstances into consideration it appears to the court that the claimant has failed to prove by a preponderance of the evidence that there was either an express or implied contract of employment."

Cards and letters sent decedent by claimant support this conclusion as well as impeaching her credibility as a witness. The Holiday Card to Ballard, signed, "Carrie", and postmarked "Dec. 23, 1954," is evidence she then knew decedent, contrary to her testimony she had never met him until she answered his advertisement, January 12, 1955.

Even more damaging to her claim is the card she sent Ballard from Muscatine, Tuesday, January 25, 1955. She referred to him as "a dear", and wrote, she had "two wonderful days" with him, "Bet you will enjoy your own bed tonite.";

"Come down whenever you like." This card was written thirteen days after claimant allegedly began working for Ballard. It states she had spent (only) "two wonderful days" with him. The invitation to Ballard to "Come down whenever you like" is inconsistent with her testimony she was then living and working at his home. Moreover, it gives rise to an inference she did not then expect to live there.

She offered no explanation of her statements in this letter. These statements leave the record without satisfactory proof of the time she commenced living at Ballard's home. The letters and cards from claimant to decedent, later in 1955, indicate the continuation of the affair between them, and not the existence of the relation of employee and employer. Additional evidence of this is found in her public request that she be introduced, not as Ballard's housekeeper, but as "his lady friend."

We are satisfied the record amply supports the finding of the trial court that the evidence did not show either an express or implied contract of employment.

II. Appellant assigns error to several other findings and statements of the trial court. These might well have been prepared with greater care. There was an incorrect statement concerning the record and some other language which may have been subject to misinterpretation. However, no reversible error appears here. The order disallowing the claim was correct and was supported by the credible evidence. Concannon v. Blackman, 232 Iowa 722, 726, 727, 6 N.W.2d 116, 118, thus states the applicable rule: "If the judgment is right and is supported by the evidence, any error in the judge's reasoning or in his findings of fact is not prejudicial." In re Estate of Hale, 231 Iowa 1018, 1024, 2 N.W.2d 775, 779, points out that, "The preliminary recitation of the judge's reasons forms no part of the judgment proper * * *. The appeal is from the judgment, not the reasons assigned therefor by the court." These holdings were followed in Roth v. Headlee, 238 Iowa 1340, 1348, 29 N.W.2d 923, 927; Board of Park Commissioners v. Marshalltown, 244 Iowa 844, 855, 58 N.W.2d 394, 400, and Ruble v. Carr, 244 Iowa 990, 998, 59 N.W.2d 228, 233. We reaffirm this rule.

III. Appellant contends that "if the relationship be-

tween claimant and deceased was different from that of employer-employee but more analogous to the marriage relation, then claimant must recover on a basis of this relationship and the benefits that accrued to the estate, otherwise the estate is unjustly enriched." In re Estate of Fili, 241 Iowa 61, 69, 40 N.W.2d 286, 291, is cited. However, in that case it was found claimant " 'entered into a marriage ceremony and marriage relationship honestly and in the belief that she and the deceased were legally married.' " Generally, recovery for such services may not be had where the parties know their relation is meretricious. 98 C. J. S., Work and Labor, section 25; 58 Am. Jur., Work and Labor, section 29; 7 A. L. R.2d 137, annotation. Therefore, the suggested rule would not be here applicable.— Affirmed.

All JUSTICES concur except GARFIELD, C. J., and BLISS, J., who take no part.