WILLIAM P. COZAD et ux., appellees, v. HERSHEL STRACK et ux., appellants.

No. 50752.

(Reported in 119 N.W.2d 266)

JANUARY 15, 1963.

Herman W. Walter, of Council Bluffs, for appellants.

Porter & Heithoff, of Council Bluffs, for appellees.

GARFIELD, C. J.—Plaintiffs Mr. and Mrs. Cozad own and occupy as their home Lot 25, Block 10, Mid City Addition to the city of Council Bluffs. Defendants Mr. and Mrs. Strack own and occupy as their home Lot 24, adjoining 25 on the south. Plaintiffs' action is in two counts. Count I is a special action under chapter 650, Codes 1958, 1962, to ascertain and establish the boundary between the two lots. Count II asks treble damages under Code section 658.4 for willfully cutting down two trees on the strip of ground in dispute. Following trial to the court plaintiffs had judgment on both counts. Defendants appeal. We first consider the appeal from the judgment on Count I.

■ I. The manner in which we review the case is of vital importance. We think our review of the evidence in this special statutory proceeding is not de novo. The judgment has the effect of a jury verdict which will be affirmed if supported by substantial competent evidence. Code section 650.15; Trimpl v. Meyer, 246 Iowa 1245, 1247, 1248, 71 N.W.2d 437, 438, and citations; Mahrenholz v. Alff, 253 Iowa 446, 450, 112 N.W.2d 847, 849, and citations; Pruhs v. Stanlake, 253 Iowa 642, 645, 113 N.W.2d 300, 302. It is not disputed that this is the manner in which we should review the case.

■ II. Of course the burden of proof rests upon plaintiff. To establish by acquiescence a boundary which varies from the true line the proof must be clear. Mahrenholz v. Alff, supra, and citations.

■ III. The rule we have many times announced for establishing a boundary by acquiescence is that where two adjoining owners for ten years or more mutually acquiesce in a line, definitely marked by a fence or in some other manner, as the dividing line between them, such line becomes the true boundary although a survey may show otherwise and neither party intended to claim more than called for by his deed. Olson v. Clark, 252 Iowa 1133, 1136, 109 N.W.2d 441, 443, and citations; Mahrenholz v. Alff and Pruhs v. Stanlake, both supra.

Recognition as the boundary of the line contended for must be by both parties or their predecessors in title. Kennedy v. Oleson, 251 Iowa 418, 427, 100 N.W.2d 894, 899, and citations.

■ IV. The controversy involves. ownership of a strip of ground between the south edge of a drive along the south side of plaintiffs' residence and a hedge two to three feet south of the drive. The hedge marks the boundary for which plaintiffs contend and as established by the trial court. Defendants contend the line is at the south edge of plaintiffs' drive and that defendants own the narrow strip on plaintiffs' side of the hedge. According to the plat of the addition each lot is 50 feet wide, north and south, and 115 feet deep, east and west, facing west on a north-and-south street.

Since 1921 Charles Starkey has owned and lived on Lot 26, adjoining plaintiffs' Lot 25 on the north. Lot 26 as platted has the same dimensions as 24 and 25. About the time Starkey purchased Lot 26, his father purchased 25 and his brother-in-law purchased 24, now owned by defendants, from a common grantor. Starkey testifies that at the time these lots were so purchased wooden stakes marked the four corners of Lots 24, 25 and 26; the three owners replaced them with iron stakes 18 to 24 inches long; in 1921 he helped put in the hedge on the boundary between Lots 24 and 25 in line with the iron stakes there; in 1924 or 1925 he helped plant, 18 inches north of the hedge, the ash trees involved in plaintiffs' Count II; during the 20 years Starkey's father owned Lot 25 the witness observed the father's tenants maintain the strip in question between the drive and hedge; the father's immediate grantees, Hackleys, did likewise during the five years they owned the lot; plaintiffs also maintained the strip during the 12 years since they purchased from Hackleys.

Mrs. Hackley says that during the time they owned Lot 25 they continued to maintain it up to the hedge on the south; defendant Mr. Strack sent his wife over to see if he could cut down the ash trees and the witness replied "absolutely not." Mrs. Strack denies this conversation.

Plaintiff Mr. Cozad testifies the front of Lot 25 measured 50 feet from the stake at the northwest corner to "right under the hedge"; plaintiffs maintained the grass, weeds and leaves between the stakes on the north and the hedge on the south; Cozad trimmed broken limbs off the ash trees; about two years

before the trial Cozad hired Donald D. Henderson, a surveyor, to determine where the lot lines were; this survey showed plaintiffs' south line is two to three feet north of the line of the hedge at the rear of the lot and about two feet north of the hedge at the front. We understand this survey showed plaintiffs' north line to be about the same distance north of the line previously marked by the stakes. Also that if Henderson's survey of the boundary between Lots 24 and 25 were accepted defendants would have a frontage of about 52 or 53 feet.

Defendants have owned Lot 24 about 13 years (a year longer than plaintiffs have owned 25). Mr. Strack testifies his father, from whom he purchased, pointed out the boundary as now claimed by him. Both defendants deny the testimony for plaintiffs as to maintenance of the strip in controversy and say they maintained it except "since this trouble has come up", about two years before the trial. Defendants' evidence that they maintained the strip is corroborated by Mr. Strack's mother who lived across the street from them and by three other neighbors or former neighbors. Direct testimony of two of these witnesses was weakened some on cross-examination.

About seven years before the trial plaintiffs built a garage on the southeast corner of their lot. It extends .7 of a foot south of the disputed boundary line shown by the Henderson survey. It is admitted defendants made no objection to the location of the garage when it was built and until about two years prior to the trial.

In 1959 defendants erected a short fence from the south side of plaintiffs' garage south to a fence in defendants' back yard—across the part of the disputed strip not occupied by the garage. Not to be outdone, plaintiffs removed the part of this fence north of the line of the hedge.

V. Further review of the evidence is unnecessary. Count I of plaintiffs' action involves primarily fact questions the trial court resolved in plaintiffs' favor. We are not called upon to say whether we would reach the same conclusion. Concannon v. Blackman, 232 Iowa 722, 726, 6 N.W.2d 116, 118. There can be little doubt there is substantial competent evidence to support the result reached.

Although the testimony is in dispute as to whether occupants of Lot 24 or Lot 25 maintained the strip in question, there is no denial of Starkey's testimony that when Lots 24, 25 and 26 were purchased from a common grantor in 1921 the boundaries were marked by wooden stakes which the purchasers replaced with iron ones, the hedge was soon set out along the line thus marked as the boundary now in dispute and the ash trees were later set out on what is now plaintiffs' side of that line. Some of the testimony indicates not much was required in the way of maintaining this narrow strip.

■ Further, defendants stood by without objection when plaintiffs built their garage seven years ago on .7 of a foot of the disputed strip which defendants say they always claimed. The absence of objection by defendants or question by either party indicates both considered it proper to so locate the garage. Vander Zyl v. Muilenberg, 239 Iowa 73, 78, 29 N.W.2d 412, 415. See also Atkins v. Reagan, 244 Iowa 1387, 1389, 60 N.W.2d 790, 791.

■ That recognized boundary lines of city lots are frequently marked by a hedge is common knowledge. Plaintiffs' claim that the hedge was recognized as the boundary is not unreasonable or improbable.

Evidence in the case resembles that in Schauland v. Schmaltz, 252 Iowa 426, 107 N.W.2d 68, where the trial court, on the theory of acquiescence, established a boundary marked by a hedge as claimed by plaintiffs. On appeal we reviewed the evidence de novo, said there was support for the trial court's decision on the issue of acquiescence but affirmed on the theory there had been a practical location of the boundary in question. It is doubtful that plaintiffs' amended petition here is broad enough to state a claim under the doctrine applied in Schauland v. Schmaltz. We therefore give such doctrine no further consideration here. It is apparent that if, as here, the trial court's decision in the cited case were given the effect of a jury verdict it would have been affirmed on the ground on which it was rendered.

VI. There is no merit in defendants' contentions that Count I of plaintiffs' amended petition is insufficient or that there is a

fatal variance between this count and the proof. Neither contention merits discussion.

■ VII. There is an error in one of the court's findings on a relatively unimportant matter. The finding is not part of the judgment. Since the judgment has substantial support in the evidence and other findings, the error referred to must be deemed nonprejudicial. Concannon v. Blackman, supra, 232 Iowa 722, 726, 727, 6 N.W.2d 116, 118, and citation; In re Estate of Ballard, 252 Iowa 548, 552, 107 N.W.2d 436, 439, and citations.

VIII. Plaintiffs' Count II states a claim against defendant Mr. Strack for treble damages under section 658.4, Codes 1958, 1962, for willfully cutting down the two ash trees on the strip of ground in controversy.

Section 658.4 provides: "For willfully injuring any timber, tree, or shrub on the land of another, or in the street * * * in front of another's * * * yard, or town lot, * * * the perpetrator shall pay treble damages at the suit of any person entitled to protect or enjoy the property."

■ The trial court found $150 was the value of each tree defendant Mr. Strack caused to be cut down and entered judgment for $900 against both defendants on this count. Defendants' assignment of error against this part of the judgment is twofold: (1) plaintiffs' Count II makes no claim, either in allegation or prayer, against defendant Mrs. Strack, and (2) the evidence is insufficient to support a finding Mr. Strack acted willfully in causing the trees to be cut down.

The judgment is erroneous in the first of these respects. Plaintiffs' Count II states no cause of action against Mrs. Strack and asks no judgment against her. The judgment against Mrs. Strack on Count II cannot stand. Galt v. Provan, 131 Iowa 277, 281, 108 N.W. 760; Ogle v. Miller & Sachse, 128 Iowa 474, 104 N.W. 502; Glissman v. Orchard, 152 Neb. 500, 41 N.W.2d 756, 759, 760; 49 C. J. S., Judgments, section 40.

■ In considering the second of these errors our question is whether there is substantial support in the evidence for the finding defendant Strack acted willfully in causing removal of the trees. Count II states a cause of action at law and our

review of the testimony is not de novo. Rules 334 and 344(f) 1, Rules of Civil Procedure. Although trial was to the court without a jury the judgment on Count II must be affirmed unless the evidence is insufficient to generate a jury question. Clark v. Sherriff, 247 Iowa 509, 512, 74 N.W.2d 569, 571.

Meaning of "willfully", in the sense used in section 658.4, must first be considered. Clark v. Sherriff, supra, 247 Iowa 509, 515, 516, 74 N.W.2d 569, 573, is our latest decision on this point. It holds there was a jury question under the record there on whether defendants willfully cut down trees on plaintiff's land. The opinion points out there was no personal malice against the owner but a loose disregard for the rights of others. "The word 'willfully' is by legal lexicographers usually or most frequently defined as 'intentionally'—'knowingly'—distinguished on the one hand from accidentally and on the other from maliciously." (Citations)

Clark v. Sherriff observes that Werner v. Flies, 91 Iowa 146, 149, 59 N.W. 18, 19, contains the statement, "It is a mistake to suppose that a willful act, which authorizes the recovery of treble damages, means simply 'willingly or purposely' * * *. It means an act done wantonly, and without any reasonable excuse." Also that Koonz v. Hempy, 142 Iowa 337, 340, 120 N.W. 976, reaffirms the quoted statement. The Clark opinion dismisses these two earlier precedents with the assertion, "Unfortunately the word 'wantonly' is as elastic as 'willfully'."

Nelson v. Deering Implement Co., 241 Iowa 1248, 1256, 1257, 42 N.W.2d 522, 527, considers the meaning of "willfully" as used in Code section 562.2 authorizing recovery of double the rental value from a tenant willfully holding over after the term of his lease. The conclusion there reached is that "willfully" means "intentionally, deliberately, with bad or evil purpose, contrary to known duty."

The Nelson opinion, supra, approves what is said in Parker v. Parker, 102 Iowa 500, 505, 506, 71 N.W. 421, 422, regarding the meaning of "willful" as used in a criminal statute defining willful trespass. The Parker case, which was for damages for malicious prosecution, states: "It is therefore uniformly held that the term 'wilful,' in such statutes, not only means inten-

tionally or deliberately done, but with a bad or evil purpose, as in violation of law, or wantonly and in disregard of the rights of others, or knowingly and of stubborn purpose, or contrary to a known duty, or without authority, and careless whether he have the right or not [citations, including Werner v. Flies, supra, 91 Iowa 146, 59 N.W. 18]. * * * It follows that if the plaintiff intentionally cut or destroyed, or caused to be cut or destroyed, any of the standing or growing wood or trees, and in so doing knew he was acting without right or authority, or did so wantonly or recklessly, and in disregard of the rights of the owner, he was guilty."

Beatty v. United States, 8th Cir. Iowa, 191 F.2d 317, 318, considers the meaning of "willfully" as used in our Code section 562.2, quotes from Nelson v. Deering Implement Co., supra, and adds, "In short, for purposes of the statute, the term has the significance of obstinately or defiantly, with lack of reasonable regard on all the circumstances for the question of legal right or wrong."

We think Clark v. Sherriff, Nelson v. Deering Implement Co., Parker v. Parker, and Beatty v. United States, all supra, fairly indicate the meaning of "willfully", as used in section 658.4 and similar statutes. Many definitions to like effect, with supporting citations, are found in 94 C. J. S., page 620 et seq. See also annotation, 111 A. L. R. 79, 85 et seq. At page 100 this annotation says: "It has generally been held that questions as to the existence of the required purpose, motive or intent of the defendant, in an action for multiple damages or a penalty, are for the jury."

Of course another's state of mind is seldom capable of direct proof. Ordinarily it must be determined from the surrounding circumstances. We are not persuaded a jury question was not presented here as to whether defendant Strack acted willfully in causing removal of the trees.

Certainly there is ample evidence the trees were cut intentionally or knowingly rather than by accident or inadvertence. When the trees were cut by a man Mr. Strack employed for the purpose, both defendants and Mr. Strack's mother were present to watch the operation. The cutting was done without request

or notice to plaintiffs at a time when Mr. Cozad was gone from the city on a two-day trip. There is evidence plaintiffs had asked defendants many times to stay off the disputed strip and that, notwithstanding the Henderson survey, defendants were fully aware plaintiffs claimed to own it. The finding is warranted Mr. Strack "took the law into his own hands" without waiting for the line to be established in an orderly manner and caused the trees to be removed in disregard of plaintiffs' rights.

We have referred to testimony, although controverted, that Mr. Strack sent his wife over to ask a former owner of plaintiffs' property if he could cut down the trees, thus indicating his purpose to do so was of long standing. There is also evidence that the dispute over ownership of this narrow strip became quite heated before the trees were removed. Mr. Strack kicked "clear across the road" one of the stakes on the line of the hedge. As previously explained, Mr. Strack also had built a fence from the south side of plaintiffs' garage across the rest of the disputed ground and became "real upset" when plaintiff Cozad sawed down part of the fence.

Wilson v. Gunning, 80 Iowa 331, 335, 45 N.W. 920, is like the present case in that ownership of the strip from which the trees were cut was in dispute at the time of the cutting. It was held the evidence was sufficient to authorize recovery of treble damages under a forerunner to section 658.4.

The judgment on Count I is affirmed. The judgment on Count II is affirmed as to defendant Hershel Strack and reversed as to defendant Clara Strack. One fourth the costs in this court are taxed to plaintiffs; the remainder are taxed to defendants.

All JUSTICES concur.