# IN THE COURT OF APPEALS OF IOWA

No. 16-0165
Filed September 13, 2017

**EUNICE F. NORTH,**
　　　Plaintiff-Appellee,

**vs.**

**DOUGLAS K. VAN DYKE,**
　　　Defendant-Appellant.

_____

　　　Appeal from the Iowa District Court for Boone County, Michael J. Moon, Judge.

　　　Douglas Van Dyke appeals following a jury verdict in favor of Eunice North on claims for trespass, loss of lateral support, and loss of trees.  **AFFIRMED.**

　　　Brian L. Yung of Klass Law Firm, L.L.P., Sioux City, for appellant.

　　　Jon H. P. Foley of Nyemaster Goode, P.C., Ames, for appellee.

　　　Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**VAITHESWARAN, Presiding Judge.**

Douglas Van Dyke hired Heck's Dozer, Inc. to construct a trail in rural Boone County along a ravine between his property and adjacent land owned by Eunice North. Twenty of North's trees were removed during the trail's construction, and a portion of the completed trail encroached upon North's property.

North sued Van Dyke and Heck's Dozer, Inc. for trespass, loss of lateral support, and loss of trees.[1] The jury awarded North damages of $50,000 on the trespass and lateral support claims and $20,100 in treble damages on the loss-of-tree claim. The jury held Van Dyke 75% responsible and Heck 25% responsible. Van Dyke appealed following the denial of his posttrial motions.

Van Dyke asserts the district court should have (1) directed a verdict in his favor on North's loss-of-tree claim, (2) included additional language in a jury instruction on the measure of damages for trespass and loss of lateral support, (3) granted a new trial on the trespass claim on the ground that the "verdict for encroachment and/or trespass [was] not supported by substantial evidence and [was] contrary to the jury instruction capping damages," and (4) exercised equitable jurisdiction and considered an equitable remedy.

## I. Loss of Trees – Treble Damages

North's loss-of-tree claim was premised on Iowa Code section 658.4 (2013), which states:

> For willfully injuring any timber, tree, or shrub on the land of another, or in the street or highway in front of another's cultivated ground, yard, or city lot, or on the public grounds of any city, or any land held by the state for any purpose whatever, the perpetrator

---

[1] Heck, as an individual defendant, was dismissed.

shall pay treble damages at the suit of any person entitled to protect or enjoy the property.

The jury awarded North $6700 for the loss of trees, which when trebled, resulted in damages of $20,100.

Van Dyke contends North failed to prove he "willfully" destroyed North's trees. In his view, the district court should have granted his motion for directed verdict.

The jury was instructed it would have to find Van Dyke "acted willfully *or* without reasonable excuse." (Emphasis added.) The jury did not receive a definition of the term "willfully." The Iowa Supreme Court has defined the term as "an act done wantonly, and without any reasonable excuse." *Cozad v. Strack*, 119 N.W.2d 266, 271 (Iowa 1963) (quoting *Werner v. Flies*, 59 N.W. 18, 19 (Iowa 1894)); *accord Hurley v. Youde*, 503 N.W.2d 626, 627 (Iowa Ct. App. 1993); *cf. Clark v. Sherriff*, 74 N.W.2d 569, 573 (Iowa 1956) (citing this definition but noting "the word 'wantonly' is as elastic as 'willfully'"). The term also has been characterized as an intentional and deliberate act "without regard to the rights of others." *Bangert v. Osceola Cty.*, 456 N.W.2d 183, 188-89 (Iowa 1990). *Id.* at 189; *Cozad*, 119 N.W.2d at 272. A reasonable juror could have found the willfulness component satisfied or, alternatively, could have found Van Dyke "acted . . . without reasonable excuse."

According to North, Van Dyke approached her about his plan to build the trail. North had "no idea" what he was talking about. She "shrugged [her] shoulders" and said she "guessed it would be okay." Then North "began to worry." She sought the advice of a friend, who said the trail was "not a good idea at all." North told Van Dyke, "I don't want you on my land at all." She testified, "I

don't know how I could make it any clearer." Van Dyke responded that he would "go to a different plan."

"Later on," North heard a "loud commotion." Standing on her deck, she saw "two pieces of heavy equipment" below and "trees . . . flying." She decided not to go into the ravine to check on the commotion because she was "afraid" she would get "hit with something," and she had physical difficulties getting "down there." Suspicious of an encroachment on her land, she commissioned a survey. The surveyor confirmed her fears.

Van Dyke did not have the property surveyed before he began work on the trail. *See Drew v. Lionberger*, 508 N.W.2d 83, 86 (Iowa Ct. App. 1993) (noting "the codefendants knew a question existed as to the boundaries of Drew's property. Despite this fact, the defendants never contacted any of the Drews to determine whether or not the boundaries they measured were acceptable to Drew"). Van Dyke relied on an "old fence," "old posts," a "shed," and a "roofline" to gauge the boundary.

Heck's son, who ran Heck's Dozer, Inc. along with his father and oversaw the trail's construction, acknowledged he cleared trees on North's property. He said he did so at Van Dyke's direction. Although he also testified North agreed to this plan, a reasonable juror could have credited North's testimony that she categorically informed Van Dyke she did not want any encroachment on her land. The jury also could have credited her testimony that she never met Heck or his son. *See Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 468 (Iowa 2000) ("The weight to be given [witness] testimony was for the jury to determine.").

Substantial evidence supports a finding of willfulness. Substantial evidence—particularly Van Dyke's failure to obtain a survey before beginning the construction work—also supports a finding that he acted without reasonable excuse. We conclude the district court did not err in denying Van Dyke's directed verdict motion. *See Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (setting forth standard of review).

## II. *Jury Instruction – Measure of Damages*

The jury received the following instruction on the measure of damages for trespass and removal of lateral support:

> If you find Eunice North is entitled to recover damages, you shall consider the following items:
> With respect to any damages claimed by Eunice North for trespass and/or loss of lateral support, recovery for property damage is the fair and reasonable cost of repair as long as such cost does not exceed the value of the property prior to the damage.
> Plaintiff, therefore, must prove both of these values:
> 1. The fair and reasonable repair cost; and
> 2. The value of the property before the damage.
> If the value of repair cost exceeds the value of the property prior to the damages, the recovery is capped at the value of the property prior to incurring damage. With respect to any damages for loss of trees, the damages are measured by the replacement costs of those trees. You will not include as an item of damage any amount for the CMT invoices.

Van Dyke argues the concept of diminution of value also should have been incorporated into the jury instruction. In his view, "it was in dispute whether the land could be restored to its natural condition," and "[i]f the property could not be restored to its natural state, the measure of damages would be the value of the property before the trespass diminished by its value after the trespass."

North responds that Van Dyke failed to preserve error on this challenge. Although he did not mention restoration of the land to its "natural condition," we

are persuaded he sufficiently raised the concept of diminution of value to preserve error. We proceed to the merits.

Van Dyke's assertion that the district court erred in failing to instruct the jury on diminution of value fails because the court gave an instruction on diminution of value. *See State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004) ("Jury instructions are not considered separately; they should be considered as a whole."). Over North's objection, the court included an instruction proposed by Van Dyke stating: "Should you find that the cost of repair would create economic waste, the amount of damages awarded should be for the reduction in value of the property as a result of the installation of the path or trail."[2]

The jury heard evidence about the diminished value of North's property; North testified that if the property was not fixed it would be worth $113,000. She asserted the value was reduced by $137,000.

Van Dyke discounts North's testimony on the ground that her estimate was based on the cost of repairs. But the Iowa Supreme Court approved consideration of repair costs in *State v. Urbanek*, 177 N.W.2d 14, 18 (Iowa 1970). There, the court stated, "In establishing the actual or intrinsic value of property which has no market value or which is of such a character that its market value does not afford due compensation to the owner, wide latitude in the

---

[2] The language was part of an instruction on "economic waste." *See Serv. Unlimited, Inc. v. Elder*, 542 N.W.2d 855, 858 (Iowa Ct. App. 1995) (characterizing the economic waste doctrine as follows: "If the defects can be corrected only at a cost grossly disproportionate to the result or benefit obtained by the owner, or if correcting the defect would involve unreasonable destruction of the builder's work, the proper measure of damage is the reduced value of the building."). The economic waste doctrine has been applied in the mechanics' lien or defective workmanship context. *See id.*; *Busker v. Sokolowski*, 203 N.W.2d 301, 304 (Iowa 1972); *Conrad v. Dorweiler*, 189 N.W.2d 537, 538, 540-41 (Iowa 1971) (quoting Restatement (First) of Contracts § 346(1), at 572 (1932)); *Bidwell v. Midwest Solariums, Inc.*, 543 N.W.2d 293, 296-97 (Iowa Ct. App. 1995).

evidence is permissible," and "it has been held proper to admit evidence showing the original cost, *the cost of restoration or replacement*, the age of the property, its use and utility, and its condition." *Urbanek*, 177 N.W.2d at 18 (emphasis added).

Because the district court instructed the jury on the diminution-of-value theory of damages and the jury heard evidence on this theory, we are unpersuaded by Van Dyke's instructional challenge. While our opinion could end here, we will address Van Dyke's argument that the primary instruction on damages for trespass and loss of lateral support should have included diminution-of-value language.

"It is a general rule of Iowa law that damage for repairs to property is the fair and reasonable cost of repair 'not to exceed the value of the property immediately prior to the loss or damage.'" *See Ag Partners*, *L.L.C. v. Chicago Cent. & Pac. R.R. Co.*, 726 N.W.2d 711, 716 (Iowa 2007) (quoting *Urbanek*, 177 N.W.2d at 16). Van Dyke is correct that the diminution-of-value rule also is alive and well in the trespass context. *See Nichols v. City of Evansdale*, 687 N.W.2d 562, 573 (Iowa 2004) ("The measure of damages for trespass is either the diminution of the property value caused by the encroachment or the cost to remove the encroachment."). But, it is only the "general" rule of damages for property that cannot be repaired or restored.

*White v. Citizens National Bank of Boone*, 262 N.W.2d 812 (Iowa 1978), cited by Van Dyke, makes the distinction clear. There, a plaintiff sued for damages to her property that occurred during remodeling of a building on an adjacent property. *White*, 262 N.W.2d at 814. Neither party appealed from a jury

finding of trespass. *Id.* The plaintiff focused on damages, challenging the district court's refusal "to permit damages of before-and-after value." *Id.* at 817. The Iowa Supreme Court stated whether this type of evidence was admissible depended on "whether the building was subject to repair or whether it could not be repaired." *Id.* If the building was subject to repair, the court said "the true measure of damages [was] the amount necessary to restore it to its former condition, including any special items of damage which are shown." *Id.* If the building was not subject to repair, "the measure of damages [was] the value of the property before the trespass diminished by its value after the trespass." *Id.* "The only conclusion to be reached," the court said, "is that the building could be repaired." The court held the district court "submitted the case on the proper theory of damages." *Id.*

The same is true here. North's witnesses testified her embankment leading to the ravine could be repaired. According to a geotechnical engineer, the construction work altered the stability of the bank on North's property and affected the surface water run-off. The engineer testified "[T]he hill side had been compromised and . . . it was moving." She opined this resulted in the "loss of vegetation on the hill which . . . changed the water pressures in the hill side."

The engineer offered three options to remediate the embankment. The first "was simply to just replace what had been eroded at the time or sloughed off at the time and place riprap[3] at the bottom of the slope . . . to put weight back . . . in order for the soil to have something to push against so it won't slide down the hill farther." The second option was "a little more comprehensive" because it

---

[3] An excavator defined "riprap" as "[t]he large white chunks of limestone you see like at the lake or around a pond." He testified it was used for "[e]rosion control, primarily."

addressed the maintenance of water pressures in the hill by adding drain lines as well as riprap. The third option would have involved chemical stabilization with lime piers, as well as the addition of drain lines and riprap, but the lime was known to kill vegetation. After consulting with an excavator who recommended the substitution of metal sheeting for the lime piers, the engineer opined the sheeting would be an appropriate alternative.

The excavator who recommended the metal sheeting evaluated each option for the jury. He testified the first option would have regraded the slope but would have required him to disturb so much area that he "was afraid it would just make it even worse in order to even get a machine in there." The second option also was not feasible in his view because he did not see how "you could cut even further back into that slope and make it either maintainable or even stable." As noted, he chose the third option with the substitution of metal sheeting for the lime piers. He said the sheeting would eliminate the need to regrade the slope and would give the slope "structure without tearing up a bunch more." In his words, "[T]hat's what I felt would be the best to keep the lateral force of that earth from kicking out any further and get everything stabilized and it would last."

Certainly, this form of stabilization would not have restored the bank to its "natural condition," but this is not the standard our law imposes. As discussed, North simply had to establish a "fair and reasonable cost of repair" and the value of the property before the damage. *See Ag Partners*, 726 N.W.2d at 716. The excavator estimated the cost of repair at $129,690. This figure was significantly less than the $221,067 estimate North provided for the value of her three lots. In

sum, North's witnesses established the embankment was repairable at a cost that was well below the value of the property.

Van Dyke and his witnesses did not attempt to refute the proposition that North's embankment was repairable. They too asserted the area could be repaired but at a significantly lower cost. Van Dyke testified he "met [with North] down at the bottom, at the trail where we encroached on her property, and talked about solutions." He said Heck "offered to fix it and said what he [could] do." North told him she wished to "consult some experts." Heck, in turn, testified he could have moved dirt to the embankment at a cost of $2500.

In light of the virtually undisputed evidence that North's embankment was repairable, there was no basis for the addition of a diminution-of-value measure of damages in the general damages instruction. While Van Dyke suggests this measure of damages may be the proper measure in a loss-of-lateral support case, the opinions he cites do not foreclose a cost-of-repair rule. *See Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 206 (Iowa 1980) (addressing argument by the plaintiff for a diminution-in-value measure of damages, "provided such an amount [was] not greater than the cost of restoration"); *Richardson v. City of Webster City*, 82 N.W. 920, 922 (Iowa 1900) (summarily affirming a jury instruction measuring damages as "the difference between what the property was fairly worth in the market before the work was done and what it was worth thereafter" but citing *Finley v. Hershey*, 41 Iowa 389 (1875), which relied on the permanency of the damage in opting for a diminution-of-value measure: "[W]hen permanent injuries of this kind are done to real property the owner will not be required to restore it to its former condition. The wrong-doer cannot impose a

burden of this kind upon the injured party and thus escape liability for the full amount of the injury done.").

We conclude the district court did not err in instructing the jury that the proper measure of damages for trespass and loss of lateral support was the cost of repair. *See Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006) (setting forth standard of review).

### III. *Sufficiency of the Evidence – Trespass/Loss of Lateral Support*

Van Dyke contends the jury's damage award of $50,000 for trespass and loss of lateral support had "no relationship to the amount claimed by North or the testimony of her expert witness" and was "contrary to the specific instruction . . . that the amount awarded for 'cost of repair' could not exceed the value of the property before the damage occurred."

"The determination of damages is traditionally a jury function," and "[a] jury's assessment of damages should be disturbed 'only for the most compelling reasons.'" *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 345 (Iowa 2005) (quoting *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990)). One of those reasons is an absence of evidentiary support. *Id.*

The award was supported by substantial evidence. The award fell within the $2500 to $129,067 range of estimates furnished by the witnesses. *See Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975) ("Where the verdict is within a reasonable range as indicated by the evidence we will not interfere with what is primarily a jury question.").

### IV.    Equitable Remedy

North's petition contained a request for "appropriate equitable and injunctive relief."  During trial, Van Dyke asked the district court to exercise its equitable jurisdiction to "fashion an equitable remedy."  The court effectively denied the request.

On appeal, Van Dyke argues,

> The evidence is uncontroverted that an award of monetary damages will not result in justice and closure for the parties. Neither party is able to perform any form of "repair" or restoration of the lateral support within the ravine because there would be a potential invasion of the neighbor's property.

"The decision of whether to grant injunctive relief lies in the discretion of the trial court, but, as an extraordinary remedy, injunctive relief should issue only when the party seeking relief has no adequate remedy at law."  *Green*, 293 N.W.2d at 208 (internal citation omitted).  North had an adequate remedy at law. As discussed, the parties presented several options to repair the embankment, and they provided cost estimates.  The option the excavator recommended accounted for the inability to traverse the neighbor's property.  Equity did not need to be invoked.

**AFFIRMED.**