JAMES A. DAVIS, Appellant. v. TOWN OF BONAPARTE, J. N. McDAVITT and ROBERT CRESAP, Appellees.

**Dedication of streets.** An administrator having mere power to
1  sell the land of his decedent to pay debts cannot dedicate any part of the same as a public street.

**Same:** IMPLIED DEDICATION: INTENT: PUBLIC USE. To constitute
2  an implied dedication of land there must have been an intent on the part of the owner to set it apart for public use; and also a knowledge of such use, which knowledge will not be inferred from use alone. Evidence held insufficient to show the owner's intent to dedicate land for street purposes.

**Municipal corporations:** HIGHWAY: PRESCRIPTION: EVIDENCE. To
3  establish a highway by prescription the use must have been general, continuous and uninterrupted for the full statutory period; and the owner must have had express notice, inde-

pendent of the mere use, that a highway was claimed. Evidence held insufficient to establish a highway by prescription.

**Same.** The extent of a highway established by prescription is limited to the land used for that purpose; and to justify a finding that the place is a public way, rather than one for private uses, the evidence must be clear and satisfactory.

**Same.** The public right in a highway established either by dedication or prescription is subject to existing private uses.

**Same:** PERSONAL INJURY: LIABILITY. To render a town liable for a personal injury caused by falling into an open cellarway, the accident must have occurred in a public way and not upon private premises; and unless the cellarway was a public nuisance the owner of the premises is not liable to a mere licensee, or trespasser.

*Appeal from Van Buren District Court.*— HON. F. W. EICHELBERGER, Judge.

TUESDAY, FEBRUARY 11, 1908.

ACTION at law to recover damages received upon what is claimed to be one of the streets of defendant town. At the conclusion of plaintiff's evidence the trial court on motion directed a verdict for defendants, and plaintiff appeals.— *Affirmed.*

*Starr & Calhoun* and *John E. Craig,* for appellant.

*Mitchell, Hunter & Irish,* for appellee town of Bonaparte.

*Wherry, Walker & McBeth,* for appellee J. N. McDavitt.

*Work, Brown & Harlan,* for appellee Robert Cresap.

DEEMER, J.— Defendant Cresap is the owner of a building in the town of Bonaparte, and during the time material to our inquiry defendant McDavitt was his tenant occupying and managing the property. Eastward from the

building some ten or twelve feet from Water street, and extending into what plaintiff claims is a street, is a cellarway eight feet and four inches from the building. This cellarway was covered by a double door, but on the evening in question one of these doors had been left open by defendant McDavitt. On the night of December 1, 1905, plaintiff, while passing along one of the streets of defendant town, had a call to urinate, and, passing over what he claims is a street, went down the east side of the building, and fell into the open cellarway, receiving the injuries of which he complains. There were no guard rails, barriers, or other protection around the cellarway to prevent persons from falling therein if the door was left open, and it is charged that all the defendants are responsible for plaintiff's injuries in negligently placing this cellarway into what is claimed to have been a public street, in the construction of said cellarway, and in allowing the door thereof to remain open. Defendants each and all deny that the cellarway was in a public street, and they further alleged that plaintiff was a trespasser upon the property, that he was guilty of contributory negligence, and that they were in no manner negligent with reference to the opening of the cellar door.

The first question to be decided is, was the place where plaintiff was injured a public street, or so managed and controlled by defendants or any of them as to invite persons to travel thereon? If the place where the cellarway was maintained was private property, then plaintiff was a trespasser, and he is not entitled to recover, no matter what his injuries, for there is no claim of any intentional or malicious injury to him, and no contention that there should be liability under the theory of the " spring gun " and other like cases. The Cresap building fronts on what is known as Water street, and it is claimed that plaintiff was injured in what is known as Washington street running along the east side of this property. Defendants deny that there ever was a street known as Washington at that point, and they say that if

there was it was a street by dedication or prescription and did not cover the ground where the cellarway is situated. There seems to be no plat dedicating the land to the town in the ordinary or usual way, and, if the place where plaintiff was injured was in a street at all, it was because the land was either dedicated to public use, or existed as a street by reason of prescription.  If there is such a street, it ran from Water street to the Des Moines river, a distance of less than a block.  What is now territory in the town of Bonaparte seems to have been platted or laid out in the year 1841, and the record of this plat shows that the strip of land in controversy with other property east and west was reserved by the owners " for mill purposes."  There was a regularly laid out street some six hundred and sixty feet east of what is now denominated Washington street leading from Water street to the river.  This was known as Madison street.  The evidence shows that for some time prior to the year 1861 there was a ferry across the river which landed for a time at the foot of what is now claimed to be Washington street.  In 1861 this place was abandoned as a landing, for the ferry was operated by animal power and landed where it would. In 1872 a bridge was built across the river at another point, and the ferry went out of business.  After the abandonment of the ferry the territory covered by this claimed street was used by persons who wished to go to the river for sand, to swell wagon wheels, or to drag material from the river.  It was never so far as shown accepted by the town as a public street or improved as such, save as we shall hereinafter set forth.

When the building was originally constructed upon the site of what is now the Cresap property, which was more than fifty years ago, the cellarway extended out into what is now claimed to be a street just as it did at the time of the accident.  There was a door opening out from the building something like two-thirds of the distance from the front toward the river, and further south the owner of the hotel

had constructed a coalhouse which extended farther out into the so-called street than did the cellarway. Back of the coalshed, as we understand it, was another door. Cinders were thrown along the east side of the building from the front past the cellarway to the first side door of the building, and there were also some flat stones upon which people might step. Wood was corded upon the west side of the so-called street out upon a line with the coalshed. Originally the barn belonging to the hotel was on the east side of this claimed street, and the hotel people went across the open space to get to the barn. The owners of the property on both the east and the west side of this space built barns or outhouses at the rear of their lots close to the river. A barn on the east was built out into this open space now claimed to be a street extending into it something like twenty feet. People desiring to use any of these improvements to the rear of Water street and between it and the river drove over this open space to which we have referred, turning east or west as occasion demanded. In the year 1884 a road supervisor put in a culvert or sewer running lengthwise of the strip in question to carry the water from Water street and beyond down to the river. This ran within ten or twelve feet of the Cresap building, and from the time of the construction thereof there was no wagon track west of this sewer. Occasional use was made of the part west of the sewer by persons traveling on foot, but this was occasional only. The evidence shows that this was by men who went to the river bank to play games of cards and for other private purposes. No sidewalk was ever constructed by the city or by any one else save as we have indicated, and what travel there was by wagon went down the center of the strip of ground. No work was ever done upon this open space by the town or by any one else save as heretofore indicated. The town of Bonaparte was not incorporated until the year 1898, and it took in the strip in controversy; but there is no showing that by plat or otherwise the strip in dispute was regarded as one of the streets

of the town.   Of course, if it was a highway before the incorporation, the act of incorporation made it one of the streets of the town.   Nothing seems to have been done by the town since its incorporation to make it a town street or highway; hence if there be any liability it is because of what was done before the incorporation.

We have set out the substance of the testimony showing use, and shall now refer to plaintiff's claim that the land was dedicated to, and the dedication accepted by, the public. When originally platted the land was owned by Wm. Meek and Roger N. Cresap.   In making their plat they expressly reserved the tract in dispute with much other ground lying south of Water street and abutting upon the river for milling and other purposes.   They manifestly did not dedicate it for street purposes, but on the contrary expressly reserved it to themselves.   Appellant contends that thereafter there was an express dedication of the land as a highway or street in virtue of a conveyance made by the administrator of the estate of one William Bateman, deceased, to W. C. Sturdivant, by a conveyance from the administrator of Sturdivant's estate to Norman L. Sturdivant, by Norman L. Sturdivant to Jennie Sturdivant, by Jennie Sturdivant to Hugh H. Meek, and by Meek to Robert N. Cresap, of the lot occupied by the Cresap building.   None of these conveyances so far as shown were of the strip in question, nor were they made by the owners thereof in so far as this record discloses.

Moreover, the first express dedication relied upon was by an administrator who was selling the land of a deceased for the payment of debts.   Surely he had no authority on behalf of the heirs of the deceased to make any such dedication as claimed, even had the land belonged to the estate of the deceased which he represented. He had no charge of the real estate save to sell it to pay debts.   He had no title to the real estate, and no authority to dedicate any of it to public uses.   If the title was ever in the party whose estate he represented, it passed to the heirs of

1. DEDICATION
OF STREETS.

202 DAVIS v. TOWN OF BONAPARTE. [137 Iowa

such party, and they alone could dedicate the same to the public. Manifestly there was no express dedication to the public. If there be any dedication, it must be implied from the facts hitherto recited.

We do not think that they amount to a dedication by either of the original owners or by their grantees. The chain of title to the tract does not appear, and so far as shown it is

2. SAME: implied dedication: intent: public use.

in the original dedicators, reserved to them for milling and other purposes. The use of that part of the strip where the accident occurred, obstructed as it has been with sheds and cord wood, has not been such as to show a dedication. There was perhaps enough testimony to show an acceptance of that part of the strip actually used had there been a dedication, but not such use as to show an implied dedication for highway or street purposes. Our conclusion here finds support in the following cases: *Davis v. Clinton,* 58 Iowa, 392; *Daniels v. Railroad,* 35 Iowa, 131; *State v. Railroad,* 45 Iowa, 142; *Fairchild v. Stewart,* 117 Iowa, 734. To support a dedication knowledge of the owner or owners will not be inferred from use alone. *State v. Railroad, supra.* The distinction between dedication and prescription is this: The first is established by proof of an act of dedication and of the *animus dedicandi,* without reference to the period of use; in the second, long user is an essential ingredient. *State v. Railroad, supra.* The intention of the owner to set apart the lands for the use of the public as a highway — the *animus dedicandi* — is the fundamental principle, the very life of dedication. *Daniels v. Railroad, supra; Manderschild v. City,* 29 Iowa, 73.

We are of opinion that no *animus dedicandi* on the part of the owners of this strip of ground is shown. It may be that some of the defendants might be estopped in a controversy between them and the owners of the strip from claiming title to the strip, and perhaps from asserting that the strip was not a street; but this estoppel will not apply either to the

town or to the plaintiff, for a highway cannot be thus established. It must at all times be remembered that none of the defendants herein so far as shown ever had any title to the strip of ground in dispute. Their conveyances were of property adjacent thereto, and as we have said in an action between themselves and the true owners, or perhaps in an action brought by the town against them, they might be estopped by reason of their conveyances from saying that the ground was not a street; but this does not prove the intent of the true owners of the ground to dedicate it to public uses. Moreover it seems that part of this strip of ground has been used for private purposes. It has been covered in part by barns, coalsheds, cord wood, and stone, and by water pipes from a mill, thus showing a use at least in part for the purposes for which it was reserved.

Coming now to the question of prescription, we find no such user prior to the year 1873 as would establish a highway by prescription. The ferry which for a time landed at 3. MUNICIPAL COR- the foot of this strip was privately owned, and PORATIONS: highways: for the use of which a charge was exacted. prescription: evidence. Just who owned and maintained it does not appear. It may have been the owner of the strip himself; but, whether this be so or not, there is nothing to indicate that it was not used by license or permission of the owner. Again, this use does not appear to have been continuous, uninterrupted, and adverse for the full period of ten years. Some time during the use of the ferry the motive power was changed, and thereafter it landed wherever it saw fit on the north side of the stream and without reference to the strip of ground in dispute. There was no more travel over this strip than at other places, and the strip itself was vacant and uninclosed. True some people used it occasionally when the river was low in order to ford the stream, but no more than at other places. After the bridge was built over the stream at another place some time about the year 1872, the ferry was abandoned and people generally crossed the bridge.

From that time on there was no occasion for travelers to use this strip, and it was used very infrequently and then by persons who went down to the stream to get sand, to wash their horses and wagons, and for other like purposes. Practically all of the time after the building of the bridge and down to the time of the accident this strip was used for private purposes, for the piling of wood, to reach outbuildings back of those fronting on Water street, and for other like purposes. It was never improved as a street, and although washed out in the center the travel which there was down to the river was in the gulley which was washed out by the water. The sewer was not built in order to improve the street for travel, but to conduct the water from Water street and territory north of that down to the river. The sewer was something like ten or twelve feet east of the Cresap building, in other words, out in the street; and from that time on there was no travel except by an occasional footman between this sewer and the building. Any travel along the building of necessity was diverted by the coalshed and other structures built out and into the space of ground between the sewer and the building. The travel since the abandonment of the ferry down to the river was desultory and occasional, and never except as indicated was west of the sewer. That people used it to get to the rear of their buildings would not make it a public highway; nor would the building of a sewer lengthwise thereof amount to a prescriptive use for public travel. When attempt is made to create a highway by prescription, the highway is limited by the use. This marks its boundary and confines its breadth. In no event as it seems to us should there be held to be a highway by prescription at the place where plaintiff was injured. This was nothing more than a private way which plaintiff was attempting to use as such to get to an obscure and out of the way place where he might answer a call of nature. To establish a highway by prescription the use must be general, uninterrupted, and con-

tinuous for the full period of the statutory limitation, and since the adoption of the Code of 1873 something more than user must be shown.    *Gray v. Haas,* 98 Iowa, 504; *State v. Mitchell,* 58 Iowa, 567; *Fountain v. Keen,* 116 Iowa, 409. .

Even if there was user by the public of part of the strip, this use did not cover that part of it where the accident occurred.    The coalsheds, the cord wood, and other obstruc-

4. SAME.

tions interfered with any use of that part of the strip where plaintiff was injured, save for private purposes.    While the case may be a little close upon this question of prescription, the evidence must be clear and satisfactory in order to justify a finding that the strip was a public highway and not maintained for private purposes. The trial court was justified in holding that no case was made for a jury upon this proposition.

At any rate a highway or street established either by dedication or prescription is subject to the easements, obstructions, and private uses made of it at the time the ded-

5. SAME:

ication is made, or when the use becomes such as to imply a grant or dedication.    In other words, the public acquires its rights thereby, subject to such use as the property is then put to.    1 Thompson on Neg., section 1194.    This being the rule, the place where plaintiff was injured never became a part of a public thoroughfare.

Unless the place was a public street, defendants are not liable for the injuries plaintiff received.    His use of the premises if it was a private way was either unjustifiable or

6. SAME: personal
   injury:
   liability.

at most permissive or as a licensee, and none of the defendants owed him any duty except to refrain from intentional or wanton injury. If a licensee he accepted the risks incident to the use thereof and cannot hold defendants or any of them liable.    *Stevens v. Nichols,* 155 Mass. 472 (29 N. E. 1150, 15 L. R. A. 459); *Cahill v. Layton,* 57 Wis. 600 (16 N. W. 1, 46 Am. Rep. 46).    In no event would the owner of the building be

liable, for the cellarway itself was not a public nuisance. *Day v. Mt. Pleasant,* 70 Iowa, 195; *Keys v. Cedar Falls,* 107 Iowa, 513; *Perry v. Castner,* 124 Iowa, 391.

We have gone over the record many times, and find no reason for reversing the order of the trial court. The judgment must therefore be, and it is, *affirmed.*