**Clarence W. BANGERT, Carl E. Berkenpas and Barbara E. Berkenpas, Appellants,**

v.

**OSCEOLA COUNTY, Iowa, Appellee.**

**No. 89–713.**

Supreme Court of Iowa.

May 23, 1990.

Robert R. Eidsmoe of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellants.

Richard D. Zito and Harold D. Dawson of Corcoran, Skiver, Zito, DeKoter & Thole, Sibley, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and LAVORATO, JJ.

SCHULTZ, Justice.

Historical facts concerning the settlement of extreme northwest Iowa are a vital and interesting portion of the record in this trespass action. Plaintiffs seek damages against Osceola County for the wrongful removal of trees standing along a half-mile stretch of county roadway. In 1873 pioneers William and Mary Foster traveled by covered wagon to their homestead and built a sod hut on a flat and treeless plain. As a condition for the receipt of a patent to 160 acres of land from the United States, they were required to plant ten acres of trees. At the same time, the Fosters planted the cottonwood trees at issue in this appeal. Over the years these trees grew to 80 feet in height, containing among them the alleged largest cottonwood tree in Iowa. Little did they realize that their grandson Clarence W. Bangert and great-granddaughter and husband Barbara E. and Carl E. Berkenpas, all present owners of the

land and plaintiffs here, would be embroiled in this controversy with the county over the removal of the last twenty-eight living trees.

This controversy flared when the county proposed to improve the road. County engineer Rolley Glasgow, described in plaintiffs' brief as "no Johnny Appleseed," and the Osceola Board of Supervisors were determined to remove the row of thirty-one cottonwoods, one plum and four other trees which the county officials claimed were on the county's road easement. Despite a traffic count of only twenty vehicles per day, the county thought it necessary to upgrade the road and avoid possible liability from falling limbs. The plaintiffs protested on numerous occasions and offered several alternatives to removal. Historic, sentimental, and environmental concerns were all rejected and the trees, which could be seen for eight miles, were doomed. On August 7, 1986, when the engineer knew plaintiffs were out of state on vacation, the trees were cut down. Two and half years later the road remains unimproved.

Plaintiffs commenced this action against Osceola County seeking treble damages pursuant to Iowa Code section 658.4 (1985) for the destruction of the twenty-eight healthy cottonwood trees and the plum tree. They also asked for damages for the loss of the fence, crops and top soil. The county denied liability for the trees, claiming it had a right to remove trees standing on a county road right-of-way easement and that plaintiffs suffered no damages because the trees had no value.

This claim was tried to the court as a law action. The trial court held the road had not been properly established in 1872–73, but that the county had a limited road easement created by prescription use. As the trees were not located on the easement, the court held that the county had no right to destroy them. The court awarded plaintiffs treble damages calculated on the trees' commercial market value as lumber plus amounts for crop and fence damages.

Plaintiffs have appealed claiming that the trial court should have taken into account additional factors in calculating dam-

ages. The county cross-appealed contending that the trial court erred in determining: (1) the road was not legally established; (2) the county acquired no property rights to the trees by prescriptive use; and (3) the county's destruction of the trees was willful and subject to treble damages. We first address the county's contentions.

I. *Statutory establishment of the county road.* The county challenges the trial court's determination that the road in question was not legally established. The parties agree that the statutory law relating to the establishment of the road is governed by Iowa Code sections 920–958 (1873).[1] Under these sections a county road could have been established by either the "consent" method described in sections 957 and 958, or by the "petition-notice-hearing" method set out in sections 920 to 956.

■ Once it is established that the board of supervisors had jurisdiction to establish the road under either method, there is a presumption that the public officials acted legally. *See Paul v. Mead,* 234 Iowa 1, 9, 11 N.W.2d 706, 710 (1943). The county contends that the record is adequate to support a finding that under either method the board acquired jurisdiction to establish this road in 1872. Consequently, the dispute centers on proof that there was compliance with the relevant sections that gave the supervisors authority to act.

Proof of jurisdiction was submitted from the records of the county auditor's office and the Osceola county road calendar book which are nearly identical. An excerpt from the auditor's office record for November 11, 1872 documents the happenings over a century ago:

At the Regular September Session of the Board of Supervisors to-wit: on the 2d day of September A.D. 1872, a resolution was adopted fixing the second Monday in November A.D. 1872 as the day for the final hearing of objections to the establishment of county roads on every section line in Goewey Township petitioned for by L.P. Crandall, John Perry, L.C.

Van Horn and 62 others. Now, therefore, no persons appearing to make objections to said roads and no claims for damages having been filed, said roads are hereby declared established absolute.

F.M. Robinson

Auditor

■ Additional code sections and principles of law are relevant. Unless otherwise directed by the board of supervisors, a highway established under the aforementioned code sections must be sixty-six feet in width. § 921. The county only acquires an easement for road purposes; the ownership of the real estate remains in the titleholder. Peterson, *Arboreal Law in Iowa,* 44 Iowa L.Rev. 680, 685–86 (1959) (citations omitted). To avoid the claim of trespass, the county pled an affirmative defense of easement. It has the burden of proving the truth of its affirmative allegation. *Gaston v. Finch,* 246 Iowa 1360, 1365, 72 N.W.2d 507, 510 (1955); *see* Iowa R.App.P. 14(f)(5).

■ A. *Consent method.* In 1872 a highway could be established by the board of supervisors "provided the written consent of all of the owners of the land to be used for that purpose be first filed in the auditor's office." § 957. The written consent of all of the land owners is a jurisdictional and mandatory prerequisite. *Davelaar v. Marion County,* 224 Iowa 669, 674, 277 N.W. 744, 746–47 (1938); *Schmidt v. Town of Battle Creek,* 188 Iowa 869, 871–72, 175 N.W. 517, 519 (1920).

The county claims it proved that all the landowners signed the petition. It first points to a stipulation of undisputed facts which indicates that there were only seventeen individual owners of private land in that township in 1872. It relies on the tax list to determine the number of people residing in the township and by a rather ingenious calculation, concludes that all of the owners signed the petition. The trial court rejected "such a leap in logic," stating that it would have been necessary to

---

1. Unless otherwise indicated all references to code sections will be to the 1873 Code which

became effective July 1, 1872.

obtain the consent of the affected owners of property in an adjoining township since the road was platted on the township line. The court further indicated the county relied on other matters outside the record to infer that all the landowners consented. We agree with the trial court.

The county also claims that the 1872 auditor would have known the names of the township land owners and the necessity of having their names on the petition for the establishment of the road. It urges that it is clear that the auditor was satisfied that consent was given for the establishment of the road in question. The county submits that it must be presumed that the auditor acted legally in performing his authorized acts in establishing the road.

 While our statutory law recognizes the regularity of proceedings of county officers, an exception is noted to matters required to be entered of record. Iowa Code § 622.56 (1985); *Davelaar*, 224 Iowa at 674, 277 N.W. at 747. While this statutory presumption applies to acts of supervisors in proceedings to establish roads, this section does not raise a presumption of jurisdiction " 'in the absence of any determination by [the board] that it had jurisdiction.' " *Davelaar*, 224 Iowa at 674, 277 N.W. at 747 (quoting *McBurney v. Graves*, 66 Iowa 314, 317, 23 N.W. 682, 683 (1885)). There is no presumption that the board has jurisdiction; it must be shown. *Id.* (citing *McKinley v. Lucas County*, 215 Iowa 46, 53, 244 N.W. 663, 666 (1932)). Before any presumption of jurisdiction can arise, the auditor must make a determination of jurisdictional facts on the face of the proceeding. *Id.*

An examination of the auditor's records shows that a petition was filed with the board of supervisors. The county auditor did not recite that consent of all the landowners was filed. The auditor did not state that its office or the supervisors had jurisdiction or authority to proceed. The record is silent as to any determination by the officers that all owners consented to the road. We believe the entry does not contain the necessary jurisdictional recital required to trigger a presumption of jurisdiction.

Additionally, there is no indication that the auditor or board of supervisors considered this to be the establishment of a road by consent. To the contrary, the matter was set for hearing to take objections and to pass on claims, a procedure not required under the consent statute. For all of these reasons we conclude that the trial court correctly rejected the county's claim that the road was established by consent.

 B. *Petition-notice-hearing method.* The trial court determined that the 1872 board of supervisors lacked jurisdiction under the petition-notice-hearing method because they failed to appoint a commissioner as required in section 924. Under section 924 the commissioner was to examine the expediency of the proposed highway and perform other duties designated by sections 925–934. Additionally, plaintiffs claim that the requirements of section 936, which outlines the notice to be given owners and occupiers of land lying on the proposed highway, were not followed. There was no showing of notice served nor was the required publication made in a newspaper for a period of four weeks.

 We agree with the trial court's conclusion that the appointment of a commissioner is a jurisdictional requirement for the establishment of a road. We stated in *Wheeler v. Riggs*, 222 Iowa 1373, 1376, 271 N.W. 509, 511 (1937), that "[t]he board acquired jurisdiction of this matter by the filing of the petition, the report of the commissioner, and the service of notice upon the plaintiff, and thereafter every presumption prevails in favor of the legality of the proceedings."

 The appointment of a commissioner and the filing of a commissioner's report are jurisdictional requirements which must be done before the supervisors may act. See *id.* If, after a general examination, the commissioner "shall not be in favor of establishing the proposed highway, he will so report, and no further proceedings shall be had thereon." § 927. Thus, an adverse report stops the proceedings and deprives

the board of jurisdiction to proceed. *Lawrence v. Williams*, 146 Iowa 671, 673, 125 N.W. 656, 657 (1910). Only a favorable report by the commissioner triggers a hearing date and notice. § 934; *see* § 936.

Neither the auditor's record nor the road calendar make any mention of a commissioner, a commissioner's report or notice given as required by these sections. The attached road plat provided a designated space for "Commissioner" but "none appointed" was written in long-hand underneath. Under these circumstances we cannot presume that these jurisdictional requirements were met. The county has failed to prove that it established the road by the petition-notice-hearing method.

II. *Prescriptive easement.* The parties agree that the county has established a legitimate claim to the road by prescriptive use. The dispute is over the extent of that prescriptive easement. The county claims that the plaintiffs had acquiesced in the established fence-line boundary which placed the trees in the road area. The trial court limited the prescriptive use to the roadway and to the five-foot shoulder that was mowed by the county. This area did not include the trees. On appeal, the county claims the court erred in not recognizing the established boundary line.

A highway acquired by prescription is limited by its use. *Davis v. Town of Bonaparte*, 137 Iowa 196, 204, 114 N.W. 896, 899 (1908) "[T]his marks its boundaries and confines its breadth." *Id.* We stated in *Schmidt:*

A prescriptive right cannot be acquired to any property that has not been actually used by the public for the prescriptive period. Prescription acquires for a party precisely what he has possessed, and nothing more; and, in proving prescription, the user of the right is the only evidence of the extent to which it has been acquired.

188 Iowa at 876, 175 N.W. at 520. We have long rejected the claim that a county road established by prescription must be normally sixty-six feet wide. *See Davis v. City of Clinton*, 58 Iowa 389, 391–92, 10 N.W. 768, 769 (1882). We have held instead that the factfinder must determine the public use and the extent of the prescriptive easement. *Id.*

The trial court made a finding of fact concerning the prescriptive use of the road. We do not agree with defendant's contention that the trial court's findings are not supported by substantial evidence. There was evidence in the record that the county had performed no maintenance of any kind in the area between the road ditch and the trees.

We reject the county's contention that the parties acquiesced in the determination that the fence marked the boundaries of the easement. The easement is only confined to its actual use by the public. Furthermore, the evidence is not contradicted that the fence was a barrier and not a boundary fence. Barrier fences do not define boundaries. *Ivener v. Cowan*, 175 N.W.2d 121, 122 (Iowa 1970) (citations omitted). We affirm the trial court's holding concerning the extent of the county's easement.

III. *Willful injury.* The county maintains that the trial court erred in allowing treble damages for the willful injury of trees under Iowa Code section 658.4. This section provides as follows:

For willfully injuring any timber, tree or shrub on the land of another, or in the street or highway in front of another's cultivated ground ... the perpetrator shall pay treble damages at the suit of any person entitled to protect or enjoy the property.

The county claims that the facts do not show it acted willfully, because it took precautions to determine whether it had the right to remove the trees. It points out that the county engineer reviewed the county records and the statutory law, concluding that the established road right-of-way would be thirty-three feet on either side of the section line.

We have indicated that in order to receive treble damages the plaintiffs must prove that the defendant acted intentionally and deliberately without regard to the rights of others. *Cozad v. Strack*, 254

Iowa 734, 742, 119 N.W.2d 266, 271 (1963). The questions of intent, purpose and motive are for the factfinder. *Id.* at 742, 119 N.W.2d at 272.

■ In this case the trial court found that plaintiffs established that the trees were cut "willfully" and stated the following:

> Willfulness is clear in this case. The callous actions of the Osceola County Engineer and the members of the Osceola County Board of Supervisors in their dealings with plaintiffs are distressing. The Board and Engineer lacked the intestinal fortitude to confront plaintiffs and tell them the Board's intent; instead they deliberately misled plaintiffs and waited until plaintiffs were out of Osceola County on an extended vacation before revving their contracted-for chain saws and destroying the trees. Their self-righteous attempts to explain the timing as coincidence demeans them and insults the intelligence of the court.

Our review of the record indicates substantial support for the plaintiffs' contention that the county, through its officials, acted willfully. The county engineer unilaterally made a determination as to legal title to the land in question. The county engineer has authority and presumably the ability to locate boundary lines. *See* Iowa Code § 111.21 (1985). However, the determination of the legality of the establishment of a road requires a legal opinion. When asked why he did not consult the county attorney, the engineer replied: "I went and checked his book, and his book was that old Code of Iowa." Additionally, the engineer admitted having no concern for the trees, conservation or loss of wildlife habitat. Without consultation with experts in these fields, the engineer and supervisors rejected alternative solutions.

■ A willful act, as used in section 658.4, is an act done wantonly and without any reasonable excuse. *Cozad,* 254 Iowa at 741, 119 N.W.2d at 271 (citing *Werner v. Flies,* 91 Iowa 146, 149, 59 N.W. 18, 19 (1894)). We deem the engineer's conduct in performing legal services and in rejecting alternate plans without investigation, combined with the matters alluded to by the trial court, as evidence of the type of behavior that falls within the statutory definition of willfulness. We hold the trial court did not err in this respect.

■ IV. *Damages.* Plaintiffs are dissatisfied with the trial court's determination of damages for the twenty-eight cottonwoods. The condition of the trees was hotly disputed at trial. Plaintiffs put on evidence that the trees' foliage was green, the leaves were large, and that there was new growth with no sign of disease, insect infestation or rot. They described birds and wildlife, picnics, shade and the trees' landmark status. Plaintiffs' expert, a consulting arborist, testified that cottonwoods are highly resistant to storms and disease and that the trees could have lived another fifty years. The county, on the other hand, presented evidence that the trees were in poor condition; many had been struck by lightning and half were dead or dying.

Both parties presented evidence by expert witnesses who had not seen the trees prior to their destruction. Both witnesses were described by the trial court as extremely well-qualified arborists. Plaintiffs' expert concluded that the trees' worth should be determined by utilizing a chart which assigned dollar-per-square-inch values. He also testified as to the cost of replacing the felled cottonwoods with six-inch diameter ash trees. Defendant's expert valued the trees on the basis of their worth as lumber.

We recently stated that it "is impossible to state a simple, all-purpose measure of recovery for loss of trees." *Laube v. Estate of Thomas,* 376 N.W.2d 108, 109 (Iowa 1985). "Because of the wide variety in their uses the law has devised a number of alternative measures, to be applied according to the location and use of the ... trees." *Id.* (citations omitted). We indicated that the loss may be measured by the difference in the value of the realty before and after the destruction of the trees, the commercial market value of the trees or the replacement cost. *Id.* We did not consider trees with special aesthetic value. *Id.*

The trial court faced a difficult task in selecting one of the alternate measures. These trees definitely had a special use other than as commercial lumber. The general measure of damages, which is the difference in the value of the realty before and after the destruction of the trees, simply does not fit the situation here. The evidence indicated little damage, if any, to the market value of the real estate. In fact, the county's evidence indicated the removal of the trees would increase, not decrease, the value of plaintiffs' crop land. The trial court properly rejected this method of assessing damages.

The court found that plaintiffs had not established a compensable aesthetic loss. Aesthetic is defined as "[r]elating to that which is beautiful or in good taste." Blacks Law Dictionary 52 (5th ed. 1979). We do not dispute the trial court's determination that these trees were not things of beauty. Many of the original trees had died and the one-half mile row of trees was no longer evenly spaced. The court commented that the trees were old and reaching the end of their useful life. The court established damages based on the trees' commercial market value at the time of their destruction at $100 per tree for a total of $2,800, allowed $50 for the plum tree and applied the treble damages provision. No damage was allowed for intrinsic losses arising from plaintiffs' special use of the trees.

■ Commercial market value as damages is appropriate when the trees have no special use and their only worth to the owner is their value as wood products. *Laube*, 376 N.W.2d at 109. This is not the case here. Plaintiffs had allowed these trees to stand for special purposes other than for commercial use. The record is undisputed that the trees were maintained for sentimental and historic reasons, for shade and windbreaks, as well as for environmental, wildlife and special landmark purposes. Consequently, plaintiffs' damages may be greater and not less than their commercial loss. As the trial court did not consider intrinsic damages other than that due to an aesthetic loss, we remand for consideration of these damages on the present record.

■ In fixing the appropriate measure of recovery, it is incumbent upon the court to keep in mind "that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed." *Dealers Hobby, Inc. v. Marie Ann Linn Reality Co.*, 255 N.W.2d 131, 134 (Iowa 1977). While it may be hard to ascertain such a loss with preciseness and certainty, the wronged parties should not be penalized because of that difficulty. Difficulty in ascertaining the amount of damages does not alone constitute a reason for denying recovery or for substituting an inappropriate method. *See id.*

We have long recognized the distinction between proof that damages have been sustained and proof of the amount of those damages. *See Patterson v. Patterson*, 189 N.W.2d 601, 605 (Iowa 1971). "[I]f the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or proximated." *Id.* (citations omitted). When referring to trees that were mature, majestic, incapable of valuation or replacement and served as a highway screen, the Louisiana Court of Appeals stated that "[t]he trial court has great discretion in rendering an award that will do substantial justice." *Pierce v. L.J. Earnest, Inc.*, 411 So.2d 1276, 1280 (La.Ct. App.1982).

Plaintiffs in this case approached the issue of damages in two ways. They offered evidence of the value of each tree as well as the cost of replacing them with another variety of tree. Other jurisdictions have been flexible in allowing intrinsic damages and have approved both of these methods. The Pennsylvania Court stated:

Whatever approach is most appropriate to compensate for the harm should be used, including perhaps the intrinsic value of the trees to the then existing use of the land or the cost of replacement or restoration. Even if the before and after value of the land is an appropriate mea-

sure of damages, evidence of the value of the trees themselves would be competent as indicative of the diminution in the value of the land.

*Bell v. Shetrom*, 214 Pa.Super. 309, 312, 257 A.2d 323, 324 (1969); *see also Samson Constr. Co. v. Brusowankin*, 218 Md. 458, 467–70, 147 A.2d 430, 435–37 (1958) (where building lots were purchased because of trees, owners have a right to enjoy property according to their own taste and wishes; damages might be the value of the trees apart from the land or the cost of reasonable restoration).

Some jurisdictions have allowed additional damages caused by the deprivation of the trees' special value. *See Elowsky v. Gulf Power Co.*, 172 So.2d 643, 645 (Fla. Dist.Ct.App.1965) (owner who worked the night shift allowed compensation for loss of comfort and convenience of a tree that shaded his house); *Woodburn v. Chapman*, 117 N.H. 906, 908–09, 379 A.2d 1038, 1040 (1977) (additional compensatory damages for a tree's special value as a boundary marker allowed); *Lucas v. Morrison*, 286 S.W.2d 190, 191 (Tex.1956) (as an exception to the general rule, owner of dairy cattle could recover the intrinsic value of a tree that shaded his cows).

Other courts have held that the replacement cost of trees is the proper method of recovery when the trees have a special value to the owner. *See Leavitt v. Continental Tel. Co.*, 559 A.2d 786, 788 (Me. 1989); *Rector, Wardens and Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan*, 306 Minn. 143, 145–46, 235 N.W.2d 609, 611 (1975); *Benavie v. Baker*, 72 A.D.2d 541, 542, 420 N.Y.S.2d 735, 736 (App.Div.1979); *Denoyer v. Lamb*, 22 Ohio App.3d 136, 490 N.E.2d 615, 619 (Ct.App. 1984). On remand we believe it is appropriate for the trial court to reconsider the evidence of damages. If satisfied that an intrinsic loss has occurred that exceeds the trees' lumber value, the court may use either method or a combination of both to arrive at an amount that will compensate plaintiffs for their loss.

V. *Summary.* We affirm the trial court's determination of liability on the part of the defendant and the application of treble damages. We reverse the trial court's determination of actual damages and remand for further consideration and determination of damages.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.