# IN THE COURT OF APPEALS OF IOWA

No. 14-1150
Filed April 22, 2015

**PAMELA S. LACKMAN and**
**CHARLES E. LACKMAN,**
 Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**JAMES LEO MUFF,**
 Defendant-Appellant/Cross-Appellee.
_____

 Appeal from the Iowa District Court for Crawford County, Edward A. Jacobson, Judge.

 A farmer appeals the award of damages in a suit involving the destruction of trees on his neighbors' property. The neighbors cross-appeal from the denial of treble damages. **AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

 Maura Sailer of Reimer, Lohman & Reitz, Denison, for appellant.

 Jason B. Bottlinger of Bottlinger Law, L.L.C., Omaha, Nebraska, for appellants.

 Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

It is fitting on Earth Day that our court considers a case about the value of trees. Farmer James Muff hired a contractor with a backhoe to destroy a stand of trees that were shading his cropland. Some of the trees turned out to be growing on property owned by his neighbors Pam and Charles Lackman. In a bench trial on damages, Muff testified the destroyed trees were "worthless." Charles Lackman testified the trees were "priceless." The district court came down in the middle.

On appeal, Muff claims the court erred in ordering damages in the amount of $30,450 based on the Lackmans' estimate of the cost to replace the trees—specifically fifty small trees at $369 each and six mature trees at $2000 each. Muff also challenges the award of $350 to reimburse the Lackmans for hiring an engineering firm to survey the property line, as well as the award of $4125 in attorney fees. In their cross-appeal, the Lackmans contest the court's refusal to order treble damages under Iowa Code section 658.4 (2013).

Because replacement cost is a fair measure for the loss of trees, we affirm the damages awarded for replacing the fifty small trees. But we do not find support in the record for awarding $2000 for each of the six mature trees allegedly damaged by Muff. We also reverse the award of survey costs and attorney fees. Accordingly, we reduce the overall damage award to $18,450. Because we agree Muff did not injure the trees with willful disregard for the Lackmans' rights, we affirm the denial of treble damages.

## I.     Background Facts and Proceedings

The Lackmans are self-described "tree people."[1]  They testified the five-and-one-half acre parcel in rural Crawford County where they have lived for the past thirty-two years was more valuable to them because it was covered with timber.[2]  The Lackmans planted more than two hundred trees on their wooded acreage over the years.  They use fallen limbs from the forest to heat their home and Charles does wood-working projects with burl growths from the trees.  Charles testified he "cried for a long time" when a 2008 tornado downed one of their 150-year-old oak trees.  They considered the woods to be their "backyard."

In 2008, James Muff bought the farm to the north and west of the Lackmans' acreage.  Muff recalled the property "hadn't seen a bulldozer in 60, 70 years" and volunteer trees were encroaching onto the cropland.  The Lackmans had allowed the previous farm owner to trim back branches from their trees with a chain saw.

In early March 2011, Muff hired contractors Earl and Brad Malone to "clean up" the fence line between his land and the acreage owned by the Lackmans.  Muff assumed the creek bed marked the boundary.  The Malones used a track hoe and a front end loader to remove trees along the creek bed that Muff later learned belonged to the Lackmans.

---

[1] The Lackmans' outlook reminds us of the heartfelt sentiments of a famous literary character: "I am the Lorax.  I speak for the trees.  I speak for the trees, for the trees have no tongues."  Dr. Seuss, The Lorax (1971).  By the end of the story, the narrator appreciates the Lorax's mission: "Plant a new [tree].  Treat it with care.  Give it clean water.  And feed it fresh air.  Grow a forest.  Protect it from axes that hack.  Then the Lorax and all of his friends may come back."  Id.
[2] The Lackmans entered a contract to purchase their acreage in 1982 and paid off the purchase price of $19,000 in 1993.

The ground being cleared by Muff was not visible from the Lackmans' house, situated on the south side of their lot, so they did not see the initial incursion onto their property. When they did notice the trees being knocked down, they called the sheriff. By the time the sheriff arrived, the Malones had moved their machinery to another area of Muff's property. The sheriff took no action.

The Lackmans claimed Muff's contractors destroyed fifty small trees, those with trunk diameters of approximately two inches, as well as damaging six mature trees, those with trunk diameters of more than ten inches. The Muffs and the Lackmans offered differing testimony on the kinds of trees that were removed. Earl Malone testified the trees included box elder, maple, and mulberry. Muff insisted the contractor took out a line of cottonwood trees and a few maple limbs. Charles Lackman testified the tree varieties knocked down included box elder, maple, ash, cherry, and walnut. Lackman acknowledged he and his wife had not planted any of the damaged trees, rather they had "come up naturally."

After Muff removed the trees, the Lackmans commissioned a survey of the property line by Sandquist Engineering. After confirming Muff encroached on their property, on November 13, 2012, they filed a petition alleging Muff "did willfully injure, destroy and remove trees" from their land. The Lackmans asked that Muff be held responsible for their "losses and expenses incurred." The petition also sought treble damages under section 658.4 and their attorney fees.

The district court heard the matter on March 12, 2014. Muff testified the realtor had told him he was purchasing the crop ground, so he assumed the boundary line was on the edge of the creek bed. He testified his efforts were aimed at improving the property. He admitted he did not contact the Lackmans before bringing in the contractor to remove the trees. Muff did not dispute that some of the trees removed by the Malones turned out to be on the Lackmans' property, as the surveyor determined the line, but Muff contended the trees had no value.

To establish how much it would cost to replace the small trees that were removed, the Lackmans presented the testimony of Phil Stephens, who had worked in the landscaping and nursery business for fourteen years. His bid placed the cost of two-inch root ball trees at $369 each and three-inch root ball trees at $489.

Stephens was not asked about the value of the mature trees. The only valuation for the mature trees came during the following exchange between Charles Lackman and his attorney:

> Q. What kind of value are you going to put on the mature trees that you want for damages? A. I don't know how you can. To me they're priceless.
> Q. For purposes of today—they're priceless to you, I understand that. But for purposes of today, you have to put a value on it. A. If a three-inch tree is worth $500, a 10-inch tree has got to be worth 2,000 or 3,000.

Pam Lackman also testified they were asking $2000 apiece for the mature trees, but did not give any basis for that valuation.

The district court adopted the Lackmans' figures, awarding damages of $369 for each of the fifty small trees they claimed were destroyed and $2000 for each of six mature trees, for a total of $30,450. The court made no finding concerning the kind of trees that Muff removed from the Lackmans' property. The court also awarded attorney fees for the Lackmans in the amount of $4125, as well as $350 to cover the cost of the land survey. But the court declined to treble the damages, finding Muff's conduct did not rise to the level of willful and wanton as required by section 658.4. Both sides filed motions to enlarge, both were denied.

Muff appeals the award of damages, attorney fees, and the cost of the survey. The Lackmans cross-appeal the denial of treble damages.

## II.    Scope and Standards of Review

We review the damage award for correction of errors at law. *Drew v. Lionberger*, 508 N.W.2d 83, 85 (Iowa Ct. App. 1993). The district court's factual findings have the effect of a jury verdict and are binding on appeal if supported by substantial evidence. *Id.* Evidence is substantial when a reasonable mind would accept the evidence as adequate to reach the same findings. *Id.*

We review de novo the awarding of common law attorney fees. *See Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005).

### III.    Analysis

#### A.  Valuing Loss of Trees

This is not the first case about the worth of a tree.  *See, e.g., Bangert v. Osceola Cnty.*, 456 N.W.2d 183, 191 (Iowa 1990); *Laube v. Estate of Thomas*, 376 N.W.2d 108, 109 (Iowa 1985); *Grell v. Lumsden*, 220 N.W. 123, 125 (1928); *Walters v. Iowa Elec. Co.*, 212 N.W. 884, 886 (1927); *Drew*, 508 N.W.2d at 85; *Welter v. Humboldt Cnty.*, 461 N.W.2d 335, 339 (Iowa Ct. App. 1990); *Zech v. Klemme*, No. 10-1969, 2011 WL 2556080, at *6 (Iowa Ct. App. June 29, 2011); *see also Fisher v. Lowe*, 333 N.W.2d 67, 67 (Mich. Ct. App. 1983) ("We thought that we would never see a suit to compensate a tree.").  Muff's extreme position that the trees he removed from the Lackmans' property were "totally worthless" is not supported by the case law.

The more nuanced question is how we should measure the trees' value on this record.  Our court has said: "Because of the great versatility of trees, it is impossible to state an all-purpose measure of recovery for loss of trees.  Iowa courts have through the years devised numerous alternatives to be applied according to the location of the trees and the use to which they were put."  *Welter v. Humboldt Cnty.*, 461 N.W.2d 335, 339 (Iowa Ct. App. 1990).  The case law identifies three main theories of recovery.  First, if the trees served a special purpose—such as a windbreak, shade or ornamental use—the damages are measured by the difference between the value of the realty before and after the destruction of the trees.  *Laube*, 376 N.W.2d at 109.  Here, the Lackmans did not provide objective evidence concerning a diminution of the value of their acreage

based on the loss of this stand of trees. Second, where the trees served no special use, the measure of damages is the commercial market value of the trees as lumber or other wood products. *Bangert*, 456 N.W.2d at 190. Here, Charles Lackman acknowledged the saplings had no market value. Third, where the trees can be replaced, the damages may be measured by the replacement costs. *Laube*, 376 N.W.2d at 109. In this case, the district court embraced the testimony of experienced nurseryman Phil Stephens, who testified replacing the two-inch diameter trees would cost $369 apiece.

On appeal, Muff claims the court erred in awarding damages based on replacement costs. Muff asserts the Lackmans had not attempted to replace the lost trees and, indeed, had no intent to replant at that location. It is true Charles testified new trees "would have a real tough time growing there." But he did not rule out the possibility of replanting: "We could try it." The court was entitled to credit this testimony and base the damage award on the evidence of replacement costs.

Moreover, replacement costs also may serve as the measure of damages when trees have a special value to the particular landowner. *Bangert*, 456 N.W.2d at 191. If the court is satisfied that "an intrinsic loss has occurred that exceeds the trees' lumber value," it may use a combination of the valuation methods to compensate plaintiffs for their loss. *Id.* In ruling on Muff's motion to enlarge, the district court identified an aesthetic loss to the Lackmans from the damage to their forest. "Aesthetic is defined as '[r]elating to that which is beautiful or in good taste.'" *Id.* at 190 (quoting Black's Law Dictionary 52 (5th ed.

1979)).  Pam Lackman testified the tree damage was visible when they drive to and from their home, and she considered the "mutilated" trees to be an eyesore. Under *Bangert*, the district court appropriately considered the intrinsic value of the trees to the Lackmans when awarding damages based on the bid from landscaper Stephens.

We next examine whether the court's finding that Muff destroyed six mature trees that were worth $2000 a piece was properly rooted in the record. The finding sprouted from the testimony of Charles Lackman, who speculated that if the small trees were worth $500 apiece, the mature trees must be worth five to six times that amount.  Although a carpenter by trade, Lackman's testimony was not based upon any special knowledge or expertise he possessed in valuing mature trees.

Moreover, Lackman presented confusing and inconsistent testimony concerning the condition of the six mature trees he was alleging Muff destroyed. In direct testimony, he admitted he "did not take a count" of the number of mature trees that were destroyed.  The following cross-examination also highlights the uncertainty:

> Q.  Now, when you talked about the six mature trees that you think were damaged, those are those six that have branches removed from them, but are not uprooted, correct?  A.  No, the whole tree's gone.
> Q.  Gone, like missing?  A.  Yeah, on the pile.
> Q.  Okay. So you're not talking about the same six trees Mr. Malone's talking about?  Because I think [plaintiff's counsel] was limiting you to the six, and Mr. Malone was talking about that had— the branches had been stripped off of it.  A.  They are the huge ones.  They're still there.

Q. Okay. So you are not claiming any damage to those? A. Well, yeah, the branches are all ripped off of them clear to the bark. I mean, the bark is almost ripped off to the trunk.

Q. So is that the ones you're asking $2000 apiece for? A. I don't know what you're talking about.

Q. Well, you put—when you were talking to [plaintiff's counsel], you put your damages on six trees at $2,000 apiece. A. There's more than six, but yes.

Q. So, yes, it was the ones where they removed the branches? A. Yes.

Q. And those trees are—they're still— A. They're standing today.

Q. They're standing and new growth is coming up through the broken part, correct? A. Hopefully come back, yes.

Muff argues on appeal that the Lackmans did not establish the six mature trees actually needed to be replaced. He claims the district court did not take into account that the trees were "still standing, had new growth, and may come back to life."

We agree the court's damage determination concerning the six mature trees was not supported by substantial evidence. The record does not sustain the court's finding the mature trees needed to be replaced or the Lackmans' approximation of the cost of replacing them. As only the cost to replace the smaller trees is established in the record, we prune back the damage award to $18,450.

**B. Trebling Determination**

Branching out on cross-appeal, the Lackmans argue the court erred in denying their request for treble damages under section 658.4. That statute provides:

> For willfully injuring any timber, tree, or shrub on the land of another, or in the street or highway in front of another's cultivated ground, yard, or city lot, or on the public grounds of any city, or any

> land held by the state for any purpose whatever, the perpetrator shall pay treble damages at the suit of any person entitled to protect or enjoy the property.

Iowa Code § 658.4.

This statutory provision of treble damages takes the place of a punitive damage award. *Johnson v. Tyler*, 277 N.W.2d 617, 618 (Iowa 1979). The word "willfully" in this statute falls on the spectrum of mental elements somewhere between accidental and malicious. *Cozad v. Strack*, 119 N.W.2d 266, 271 (Iowa 1963). It also means "without reasonable excuse." *Hurley v. Youde*, 503 N.W.2d 626, 627 (Iowa Ct. App. 1993). To receive treble damages, "the plaintiffs must prove that the defendant acted intentionally and deliberately without regard to the rights of others." *Bangert*, 456 N.W.2d at 188-89. The questions of intent, purpose and motive are for the factfinder. *Id.*

The district court found Muff's actions were "careless," but did not rise to the level of "willful and wanton" as required by section 658.4. The Lackmans disagree. In their cross-appeal, they compare Muff's conduct to the defendant's willful disregard for the property boundaries in *Drew*, 508 N.W.2d at 86. We acknowledge the similarities, but find *Drew* distinguishable. In *Drew*, the defendant failed to contact the property owner or to solicit his input before logging the trees. *Id.* But in *Drew*, the defendant knew a question existed about the boundary between the properties and chose to ignore it. *See id.* Here, Muff testified he did not know where the property line was. Based on the assertions of his realtor, Muff assumed the boundary was the edge of the creek bed. No property stakes marked the dividing line. Muff testified he had no intention to

disregard the Lackmans' rights, but just wanted to improve the property by removing "overhanging limbs off our farm ground."

As the fact finder, the district court was entitled to view Muff's explanation as reasonable, especially in light of Charles Lackman's testimony that the property line "kind of meanders back and forth." We affirm the district court's determination that Muff did not act in willful disregard of the Lackmans' rights. *See Hurley*, 503 N.W.2d at 627-28 (finding act of trimming hedge row between properties was not willful when it was an attempt to improve the property).

### C. Survey Cost

The district court awarded the Lackmans $350 to reimburse Sundquist Engineering for survey costs, finding the Lackmans "sufficiently pled those damages." On appeal, Muff contends the reimbursement was a special damage, which was not pleaded as such, and therefore, cannot be recovered. *See Wright v. Norris*, 187 N.W. 482, 484 (Iowa 1922). Muff alternatively argues the engineering fees were not a "natural, direct and reasonable consequence" of any action on his part. The Lackmans respond that the survey fees are special damages that were tried by consent, citing Iowa Rule of Civil Procedure 1.457.

More than a century ago, our supreme court drew a distinction between special damages and general damages as follows. "Special damages are such as do not ordinarily or generally result from a given cause. They are extraordinary in character in the sense that they follow as the natural result of the intervention of some condition or circumstance out of the ordinary, and therefore not generally to be expected." *Kircher v. Inc. Town of Larchwood*, 95 N.W. 184,

186 (Iowa 1903).[3] "The purpose in requiring that special damages be pleaded is to give fair notice to the other party so that the other party might be able to prepare adequately for trial." 11 Barry A. Lindahl, *Iowa Practice, Civil and Appellate Procedure* § 10:36 (2014).

In our analysis, it does not matter whether the survey cost was pleaded or not, or tried by consent or not—because we agree with Muff's alternative argument that the survey cost was not a natural result of his wrongdoing. Charles Lackman testified he commissioned the survey after the trees were removed "to make sure [he] knew exactly where [his] points were." The engineering bill was dated March 25, 2011. Muff's attorney presented Charles Lackman with a survey done when the Lackmans bought the acreage. Lackman testified the reason he had the second survey done was to "prove" where the property lines were, adding: "I knew where they were. They've always been the crop line."

The Lackmans' decision to hire a surveyor to verify the location of their boundary lines does not qualify as a natural consequence of Muff's actions. While the Lackmans may have wanted that verification to go forward with their lawsuit, that preparation for litigation does not create a direct link between Muff's encroachment on their property and the cost of the survey.

---

[3] Modern usage remains consistent with that early definition. *See* Bryan A. Garner, Garner's Dictionary of Legal Usage, 388 (3d. ed. 2011) (defining special damages as "those that are alleged to have been sustained in the particular circumstances of the particular wrong").

When we tried to find a definitive Iowa case on this point, we were stumped.[4]  But other jurisdictions have held surveyors' fees are not ordinarily recoverable as damages.  *See, e.g.*, *S. Missouri Dist. Council of Assemblies of God v. Hendricks*, 807 S.W.2d 141, 148-49 (Mo. Ct. App. 1991); *Stratford v. Wood*, 358 P.2d 80, 81 (Utah 1961); *St. Catherine v. Turner*, No. 84-779 (Wis. Ct. App. Apr. 9, 1985).  We are persuaded by the reasoning in those cases, and reverse the district court's award of the survey fee as a damage attributable to Muff.

### D.  Attorney Fees

The district court also awarded the Lackmans $4125 in attorney fees.  Generally, a prevailing party has no claim for attorney fees as damages in the absence of a statute or contract providing them.  *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993).  Because this case involves no statute or contract term allowing for the shifting of attorney fees, Muff argues the court's award was in error.

On appeal, the Lackmans argue for the first time that they are entitled to common-law attorney fees.  At common law—in rare instances—a prevailing party could recoup attorney fees if the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.*  Cases that merit the award of common-law attorney fees typically involve a claim for punitive

---

[4] In an unpublished case, our court decided adjoining landowners were not entitled to recover the expense of a survey as a cost of litigation.  *Beitz v. Bailey*, No. 02-0166, 2003 WL 1028835, at *3 (Iowa Ct. App. Mar. 12, 2003).

damages as well. *Id.* But "the recovery of attorney fees requires a showing of culpability beyond the showing required for punitive damages." *See id.*

The Lackmans were not able to show Muff's actions in damaging the trees merited trebling of their damages. Accordingly, they are not able meet the even higher standard of "connivance" or "oppression" necessary to win common-law attorney fees. Accordingly, we reverse the attorney fee award.

In sum, the district court awarded a total of $34,925 in damages and attorney fees. We affirm the award of damages in the amount of $18,450 for the Lackmans' loss of fifty small trees on their acreage. We reverse the award of $12,000 for six mature trees allegedly damaged by Muff, reverse the award of $350 in survey fees and reverse the award of $4125 in attorney fees. We remand for entry of judgment in the amount of $18,450. We affirm the denial of treble damages.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS-APPEAL.**